# Richmond

SAM BURNETTE V. COMMONWEALTH OF VIRGINIA.

February 20, 1939.

Record No. 2100.

Present, All the Justices.

The opinion states the case.

*Hester & Hester,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The accused was convicted of robbery and his punishment fixed at five years in the penitentiary. His sole contention here is that the evidence is not sufficient to support the conviction.

He waived a jury at the trial with the concurrence of the court and all questions of law and fact were submitted to the court for its determination.

The testimony was not preserved *verbatim.* It appears in the record in the form of statements of the witnesses.

One Coleman claimed that he was robbed by the accused and in its final analysis the decision of this case rests entirely upon the credibility of his testimony. If he is worthy of belief the judgment must stand. His testimony was attacked because it was claimed by the accused that Coleman was so drunk at the time he was supposed to have been robbed that he did not know what occurred. Coleman's statement appears in the record as follows:

"That he left his home on Gum street and walked down Chestnut street; that his right knee gave way and he went down on his knees when a man whom he identified as Burnette walked up and helped him up; that accused suggested that they go to Lacy Horseley's and get a drink and that they went up the steps to Pearl street, up Church street to Washington street, and down Washington street steps towards Main street, and when they had gotten about half way down the steps from Washington to Main they stopped and he (Coleman) sat down; that the steps extend an entire city block from Washington to Main streets; that there is a street light at the top and bottom of the steps; that they are

not otherwise lighted; that the accused ran his hands into his pocket and got his pocketbook out; that he asked the man what he meant by that, and the man asked him, "Where is that money?" That he told the man to go away and let him alone; that he had five one-dollar bills in his left pants pocket and some change in his right pants pocket; that the man drew up his arm as if he was going to strike him, and said, "Give that money here," and then went to his pockets and got the money and went away; that he had less than a dollar in change; that after pushing him down, the man ran down the steps towards Main street; that he then went down the steps and to the Ideal Lunch, at Horsford and Main streets and called the police; that it was between eight and nine o'clock when this took place. That he was not drunk, that he had drunk some three or four bottles of beer that night, but he knew what he was doing; that the reason he was walking so bad was because his legs were not in good shape, that he had some artery trouble in his legs that made him walk like a drunk man. That on Sunday, August 7th, he was interviewed by the two police officers, Harvey and Jacobs, that he gave them a description of the man saying he had odd features and looked like Geo. Harris. That on Monday morning, August the 8th, Policemen Harvey and Jacobs brought Sam Burnette to where he was working on Riverside Drive and asked him to look at him and see if he was the man; that he looked at him and saw that he was the man that took his money."

Coleman called the police and in response to this summons, Officers Smith and Dunn appeared. These officers testified that when they reached Coleman he was drunk "and they could not get any sense out of him, that he was too drunk to know what he was doing." This was between 8:30 and 9:00 P. M. on the night of the supposed robbery which occurred, according to Coleman, between 8:00 and 9:00 P. M. that night.

Counsel for the accused argue strongly that Coleman's statement as to the robbery is bound to be incredible and

unworthy of belief, because the officers testified he was so drunk at the time that he did not know what he was doing.

On the day after the robbery Coleman was interviewed by two officers. He gave these officers such a good description of the man who robbed him that they immediately suspected the accused, whom they arrested. He was taken to Coleman and identified by him as the man who had robbed him.

According to Officer Harvey, the accused at first denied that he had seen Coleman on the night of the robbery. Later he admitted being with him on that night. On the night in question the accused went to the Army and Navy store around nine o'clock and bought a new shirt which he immediately put on and at the same time left his old shirt in the store. Officer Franklin testified that shortly after the time of the robbery he saw the accused with several one dollar bills in his hand.

The accused, who had been drinking also, substantially corroborated the statement of Coleman in nearly every respect except he denied the robbery.

██ ██ It is well settled that the testimony of a witness may be impeached by showing that he was intoxicated at the time of the occurrence of events about which he testified. See *Bliss* v. *Beck*, 80 Neb. 290, 114 N. W. 162, 16 Ann. Cas. 366, and note; note in Ann. Cas. 1914B, page 1123, and 28 R. C. L., Witnesses, Sec. 207, page 618. However, intoxication only bears upon his capacity for accurate observation and correct memory. Generally, the admissibility of the testimony of such a witness is within the sound discretion of the trial court.

In 70 Corpus Juris, Witnesses, §124, page 96, we find the rule stated thus: "A witness is not rendered incompetent by the fact that he was drunk on the occasion as to which he is called to testify, or is drunk at the time of giving his testimony, unless his condition is such that he is unable to narrate facts and events in a way to be relied on, and it is for the trial court in its discretion to determine whether or not his testimony should be received. * * * ."

And again in 70 Corpus Juris, Witnesses, §924, page 764, is this statement: "The fact that a witness was intoxicated at or about the time of the events concerning which he testifies bears upon his capacity for accurate observation and correct memory, and hence is proper to be shown and considered in passing upon his credibility, although it does not render him absolutely unworthy of credit, and it is proper to cross-examine a witness fully as to whether he was intoxicated at such time. * * * ."

From the record we must conclude that the evidence is sufficient to support the conviction. Whether Coleman was too drunk to know what occurred at the time, constituted an issue of fact which the trial court resolved against the accused. We can not disturb that conclusion. The judgment is accordingly affirmed.

*Affirmed.*