## Richmond

LARRY NEAL TOMLINSON

v.

COMMONWEALTH OF VIRGINIA

No. 0799-87-2

Decided May 16, 1989

COUNSEL

C. Gilbert Hudson, Jr., for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

DUFF, J.—Larry Neal Tomlinson appeals his jury conviction of shooting into the occupied dwelling of Ronald Burton Ferguson in violation of Code § 18.2-279. He was sentenced to ten years in the state penitentiary.

The issues presented on appeal are: (1) whether the trial court erred in refusing the defendant's request for a continuance or mistrial when a defense witness appeared at trial under the influence of alcohol; (2) whether the trial court erred when it refused to exclude testimony that the defendant on the same night had shot into the home of Willis Wells, a charge of which he previously had been acquitted; (3) whether the trial court erred in refusing the defendant's request for a cautionary instruction regarding the testimony of an accomplice; and (4) whether the trial court erred when it refused to strike the Commonwealth's evidence on the ground that the defendant's arrest was illegal. We find no error and affirm the conviction.

On August 15, 1986, between 1:45 a.m. and 2 a.m. two shots were fired at the home of Ronald Burton Ferguson. One shot hit the front of the house and the other went through the bedroom window, wounding Ferguson. A short time later, three shots were fired at the home of Captain Willis Wells, a member of the Greensville Sheriff's Department. Two of these shots struck the house and the other hit Wells' car.

Later that evening, members of the Greensville Sheriff's Department went to what is known as the Lucas Hobbs' cabin to investigate the incidents. Upon their arrival at the cabin they saw a parked car that belonged to Barry Jones. They touched the hood and found it to be warm, as if it had been recently driven. The sheriff looked in the car and observed a shotgun shell similar to ones that had been found on the road near Wells' home immediately following the crime. He also observed three similar spent

shotgun shells in the yard. The officers then tried to enter the cabin by knocking on the doors and calling several times. When there was no response, they entered and arrested the defendant, Larry Neal Tomlinson, and Barry Jones.

The following day members of the Sheriff's Department obtained a search warrant for the cabin. As a result of the search, they discovered a shotgun wrapped in a sheet in a soybean field behind the cabin. At trial, both Jones and Florence Moss testified that it looked like the shotgun they had seen in Tomlinson's possession on August 14 and 15, 1986. Anthony Autry testified that he had recently sold the gun to Tomlinson.

Jones, in his testimony at Tomlinson's trial, stated that he had been out at the cabin drinking and partying with Tomlinson and others during the afternoon of August 14. Shortly after sunset, he had gone into the cabin to sleep. Tomlinson then awakened him because he wanted Jones to drive his car to go awaken Burt (Ferguson). Jones told Tomlinson, "[T]his is your deal with Burt. . . I ain't got nothing to do with it." Nevertheless, Jones agreed to ride along. Jones testified that when he got outside, his car engine was running, and he saw a shotgun in the car. The two then departed, with Tomlinson driving. Jones stated that they first went to Ferguson's house, and Tomlinson fired twice out the window with the shotgun. Next, they went to the Slip-In Market where Tomlinson purchased gasoline and a watermelon, while Jones remained in the car. Upon Tomlinson's return to the automobile Jones asked him where they were going next. Tomlinson replied, "I am going to wake Big Neck up too." (Big Neck referred to Wells). Jones then took over the driving due to difficulty locating Wells' home. Upon locating the home, Tomlinson fired twice at the house and once at Wells' car. A short distance away Tomlinson threw some shells out of the automobile and again took over driving. When the two arrived back at the cabin Tomlinson asked if Jones would help him get the remaining shells out of the car, but Jones refused.

Florence Moss, an aunt of both Tomlinson and Jones, testified that Tomlinson came by her home on August 14 at 9:45 p.m. and stayed until around 10:30 p.m. He was alone and driving Jones' car. She stated that he had been drinking, that he patted a shotgun he had in the car, and told her "he had one more score to settle."

Denise Green testified that Tomlinson came into the Slip-In Market while she was working on August 15, around 2 a.m., and purchased gasoline and a watermelon. She testified that another person with him remained out by the pumps.

## I

Tomlinson argues that the trial court committed reversible error in not granting a continuance or a mistrial when a material defense witness, John Wayne Brantley, arrived at court intoxicated.

The record shows that Tomlinson, through his attorney, moved the court for a continuance due to the intoxication of Brantley. The defense counsel argued that Brantley was a key witness who did not have his full capacities because of voluntary intoxication and thus, would not be alert enough to answer questions posed by the defense or Commonwealth. The Court denied the motion, stating that the docket would not permit it and that defense could call the witness if they chose and proceed at whatever risk was involved. Defense counsel then moved for a mistrial, arguing that he did not feel he could proceed without Brantley's testimony and that he would be remiss if he did proceed given Brantley's condition. This motion was denied, with the court ruling that "[t]he condition of the witness if you choose to call him is what the defense and the prosecution will just have to bear as the Court may direct." Defense counsel then proffered Brantley's testimony given in a previous trial where the present Commonwealth Attorney had the opportunity to cross-examine Brantley on the events in question. The Commonwealth objected, and the proffer was denied. Defense counsel then put Brantley on the stand, outside the presence of the jury, in order to preserve the issue. At the conclusion of the proffer, the trial court again offered the defense the opportunity to have the witness testify before the jury, and the offer was denied.

In *Burnette v. Commonwealth*, 172 Va. 578, 1 S.E.2d 268 (1939), the Virginia Supreme Court held:

A witness is not rendered incompetent by the fact that he was drunk on the occasion as to which he is called to testify, *or is drunk at the time of giving his testimony,* unless his condition is such that he is unable to narrate facts and events in a way to be relied on, and it is for the trial court in its

discretion to determine whether or not his testimony should be received.

*Id.* at 591, 1 S.E.2d 269 (emphasis added).

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). "The grant or denial of a continuance lies within the sound discretion of the trial judge." *Snurkowski v. Commonwealth*, 2 Va. App. 532, 535, 348 S.E.2d 1, 2 (1986). "On appeal the denial of a motion for a mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial." *Harward v. Commonwealth*, 5 Va. App. 468, 478, 364 S.E.2d 511, 516 (1988).

Upon our review of the evidence, we conclude that the trial court did not abuse its discretion by refusing to grant a continuance or mistrial due to Brantley's intoxication. Although at first the trial court denied defense counsel's motions due to the court's docket, we find from our review of the record that the trial court in fact ruled that Brantley could adequately narrate the facts and events of August 14 and 15, 1986. At the conclusion of the testimony the trial court again asked defense counsel if he wished to proceed with the witness. We find that this offer by the court, after listening to and observing the witness, was in effect a de facto ruling that the witness was competent to testify. The narrow issue is whether Brantley's intoxication prevented him from having the ability to communicate accurately his observations. The trial court was in the best position to answer this question and from our review of the record, we find that the court did not abuse its discretion in denying the motions for a continuance or mistrial. There is nothing in the record that would indicate that Brantley was unable to communicate adequately his observations.

## II

Tomlinson also argues that the admission into evidence of detailed testimony regarding the crime of shooting into the dwelling of Willis Wells, of which charge he had been acquitted, was prejudicial and thus reversible error. At the outset, defense counsel moved the court to exclude from the jury any evidence as to the

details of the Wells' crime. The court overruled the motion but indicated that the defense could object if it found any part that appeared to be immaterial. Counsel did object and was overruled.

Tomlinson argues that evidence of other crimes is inadmissible, particularly when the accused has in fact been found not guilty of the other charge. He also points out that the Ferguson shooting occurred prior to the Wells' shooting and, therefore, was a completed crime. Tomlinson also argues that it would have been sufficient for the witness to say the two went by another home and fired a couple of shots rather than allowing the jury to hear Wells' name. This, he argues, was especially prejudicial because Wells was a captain in the Greensville Sheriff's department.

■ We find the admission of Barry Jones' testimony was proper. The shooting into the Ferguson home was so connected in time and similar in type to the shooting into Wells' home as to be relevant to intent, plan or scheme. This issue was dealt with in *Kirkpatrick v. Commonwealth*, 211 Va. 269, 176 S.E.2d 802 (1970), in which the Court reiterated the well established rule that evidence of other offenses is generally inadmissible because of its prejudicial nature. However, there are numerous exceptions if the evidence tends to prove any relevant element of the offense charged.

> Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is part. Frequently it is impossible to give a connected statement showing the crime charged without incidental reference to such contemporaneous and similar crimes and where there is only such incidental disclosure of other offenses.

*Id.* at 272, 176 S.E.2d at 805.

Jones' testimony of the events of the evening, and the similar shooting at the Wells' home a short time after the Ferguson shooting was clearly probative of Tomlinson's intent, method, plan or scheme as it related to the present offense.

■ We do not agree with Tomlinson's argument that the evidence of the Wells' shooting should be inadmissible simply because he was acquitted of the charge. The fact that Tomlinson was acquitted of the crime charged does not mean he did not participate in it. In *State v. Smith,* 271 Or. 294, 532 P.2d 9 (1975), the Supreme Court of Oregon addressed this issue. There, the defendant conceded that "the closeness in time and the congruity of the method of the two robberies made her alleged participation in the second robbery relevant to the issues of identity and intent in the present prosecution." *Id.* at ___, 532 P.2d at 10. In *Smith,* the defendant contended, as Tomlinson does here, that "the acquittal of the other charge lessens its probative value to such an extent as to render it inadmissible when balanced against its unquestioned prejudicial value." *Id.* We reject this argument, as did the Oregon court. While acquittal of a charge may lessen its probative value, it does not make it inadmissible. There are many reasons why a person may be acquitted. The record does not contain any information regarding the prior trial, other than that Tomlinson was acquitted upon a general verdict. Therefore, we do not know if the jury ever decided the ultimate issue of fact, i.e., whether Tomlinson actually shot into Wells' home. The jury, for example, could have based its decision upon a finding that the Commonwealth had not satisfied its burden of proving that Wells' house was "occupied by one or more persons." Code § 18.2-279.

Tomlinson also contends that the trial court erred in not granting a cautionary instruction regarding the limited purpose of Jones' testimony dealing with the Wells shooting. From our review of the record, we find that the defense never requested a cautionary instruction. It might be that defense counsel did not wish to accentuate this evidence. We find no error because the court is not required to give an instruction sua sponte. *Manetta v. Commonwealth*, 231 Va. 123, 127 n.2, 340 S.E.2d 828, 830 n.2 (1986).

### III

Tomlinson next argues that the trial court erred in not granting his request for a cautionary instruction regarding the testimony of an accomplice. At trial, Tomlinson proffered the following instruction:

Barry Jones has testified that he was an accomplice in the commission of the crime charged in the indictment. While you may find your verdict upon his uncorroborated testimony, you should consider such testimony with great care and you are cautioned as to the danger of convicting the defendant upon the uncorroborated testimony of an accomplice. Nevertheless, if you are satisfied from the evidence of the guilt of the defendant beyond a reasonable doubt, you may convict the defendant on the uncorroborated testimony of a single accomplice.

■ The trial judge denied the instruction, ruling that he didn't find it applicable "because other facets of the case are corroborated by uncontradicted evidence." We agree. The uncontradicted testimony of Florence Moss, Denise Green, Anthony Autry and Burt Ferguson all corroborated material parts of Barry Jones' testimony. The Court in *Dillard v. Commonwealth*, 216 Va. 820, 822, 224 S.E.2d 137, 138 (1976), addressed the precise issue of whether the court is required to grant an instruction regarding accomplice testimony. The Court held:

The test, therefore, in determining whether a cautionary instruction should be granted becomes this: is corroborative evidence lacking? If it is, the instruction should be granted; if it is not lacking, the instruction should be refused, because to warn a jury against accepting uncorroborated testimony is to indicate that the court does not consider the testimony corroborated.

## IV

■ The final issue presented is whether the trial court erred when it refused to strike the Commonwealth's evidence upon Tomlinson's contention that his arrest was unlawful and, therefore, the evidence was inadmissible. The record shows that the defendant's motion came after the Commonwealth had presented all of its evidence and had rested. Under Rule 5A:18, in order to preserve an issue regarding the admissibility of evidence, an objection must be made prior to trial by a written or oral pleading in the record, or contemporaneously with the offer of evidence at trial. "The purpose of this rule is to allow correction of an error if possi-

ble during the trial, thereby avoiding the necessity of mistrials and reversals. To hold otherwise would invite parties to remain silent at trial, possibly resulting in the trial court committing needless error." *Gardner v. Commonwealth*, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986). Tomlinson argues that he made a motion to dismiss at a previous trial and that it was agreed in chambers prior to this trial that the motions made at the previous trial would be considered to have been made at this trial, with the results being the same and the points being preserved for purposes of appeal in the present trial. This agreement is not part of our record. While testimony regarding the arrest was made part of the record, the objections that defense made and the grounds therefor were not. See *Hogan v. Commonwealth*, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987). Therefore, the record does not contain the underlying basis of the court's rulings that is required for this Court to review the issue. In conclusion, we cannot review this issue as it was not properly preserved.

For the reasons stated, the conviction is affirmed.

*Affirmed.*

Baker, J., and Cole, J., concurred.