COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Overton
Argued at Alexandria, Virginia


MICHAEL ANTHONY BOTTOMS

v.          Record No. 0551-95-4          OPINION BY
                                    JUDGE JERE M. H. WILLIS, JR.
COMMONWEALTH OF VIRGINIA              APRIL 30, 1996


        FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                 Frank A. Hoss, Jr., Judge

        Vernon H. Miles, Sr. (Ronald W. Fahy, on
        brief), for appellant.

        Michael T. Judge, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


        On appeal from his conviction of attempted capital murder,

Michael Anthony Bottoms contends (1) that the evidence is

insufficient to sustain his conviction, (2) that the trial court

erred in admitting evidence of other crimes, and (3) that the

trial court erred in denying his motion for a mistrial.  We find

no error and affirm the judgment of the trial court.

        On May 15, 1994, at 6:10 a.m., Bottoms was driving south on

Interstate 95 in Prince William County.  He passed Trooper

Campbell, who was parked on the right shoulder, with his blue

emergency lights flashing, issuing a citation.  Bottoms drove by,

made a U-turn seventy-five feet away, drove north in the south-

bound lane, made another U-turn, and pulled up beside the patrol

car.

        Bottoms asked Campbell whether he was driving in the right

direction to reach Savannah, Georgia. Campbell told him to park and wait in front of the car receiving the ticket. Bottoms did as Campbell directed, but then got out of his car and approached the patrol car. Campbell exited the patrol car and told Bottoms to return to his car.

When Campbell finished issuing the citation, he approached Bottoms' car. He stood at the rear of the vehicle and asked Bottoms for his license and registration. Bottoms had neither and told several different stories concerning ownership of the car. Bottoms attempted several times to lure Campbell to the driver's window. However, Campbell was suspicious and refused to approach. He could see only Bottoms' left hand. Campbell directed Bottoms to exit the car. After Bottoms got out of the car, Campbell searched him for weapons and finding none, put him in the patrol car. When Campbell called in the information Bottoms gave concerning his driver's license, he learned that Bottoms had a valid South Carolina license. A DMV check on the license plates on Bottoms' car revealed that they belonged to a Buick, not a Renault, the make of car that Bottoms was driving.

After another officer arrived, Campbell spoke to the two female passengers in Bottoms' car. He then ran a vehicle identification number check on the car and discovered that it had been stolen the night before in Pennsylvania. Campbell then arrested Bottoms and the two passengers.

The car was searched and a Taurus .38 caliber revolver was

found in the glove compartment.  The revolver contained three live rounds and two expended cartridges.

In his patrol car on Interstate 95, Campbell read Bottoms his rights and Special Agent Scott read those rights to Bottoms again at the Adult Detention Center in Manassas.  Bottoms acknowledged both times that he understood his rights.  Bottoms confessed that he had attempted to lure Campbell into shooting range, intending to kill him.  He said that he was holding the loaded revolver between the seats with the hammer cocked, and that he did not shoot Campbell while he stood at the rear of the car because he saw that Campbell was wearing a bulletproof vest and would be able to return fire if shot at that distance.

Andrea Ross, one of the passengers in Bottoms' car, testified that Bottoms intended to kill Campbell, that he had the revolver in his hand while he was talking to Campbell, and that he attempted to get Campbell to approach his window so that he could shoot him.

I.

Bottoms first contends that the evidence is insufficient to sustain his conviction of attempted capital murder.  "To sustain a conviction for attempted murder, the evidence must establish both a specific intent to kill the victim and an overt but ineffectual act committed in furtherance of the criminal purpose." Wynn v. Commonwealth, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987).  An overt act must go beyond mere preparation to

- 3 -

commit the crime.  See Lewis v. Commonwealth, 15 Va. App. 337, 340, 423 S.E.2d 371, 374 (1992).  Bottoms does not contest the sufficiency of the evidence to prove his intent to kill Campbell.  Rather, he argues that because he did not point the gun at Campbell, he committed no overt act toward the commission of murder.

"Where the sufficiency of the evidence is challenged on appeal, the court must consider the evidence in the light most favorable to the Commonwealth, giving to it all reasonable inferences fairly deducible therefrom."  Brown v. Commonwealth, 5 Va. App. 489, 491, 364 S.E.2d 773, 774 (1988).

Although an overt act must go beyond mere preparation, "[i]t need not be the last proximate act to the consummation of the crime in contemplation, but it is sufficient if it be an act apparently adapted to produce the result intended."  Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946). Bottoms made two U-turns on Interstate 95 in order to approach Campbell.  He intended to shoot Campbell.  He held the loaded .38 caliber revolver, with the hammer cocked, in his right hand out of Campbell's view.  He repeatedly tried to lure Campbell to the driver's window so that he could shoot him at close range.  This active conduct, aimed at the accomplishment of the crime, constituted an overt act "adapted to produce" the commission of murder.

II.

Bottoms next contends that the trial court erred in allowing the Commonwealth to present evidence that he had committed a carjacking in South Carolina and a robbery and larceny of a car in Pennsylvania.  As a general rule, other crimes evidence is inadmissible.  Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  Bottoms' pretrial motion in limine, seeking suppression of the portions of his confession dealing with the alleged prior offenses, was granted.  He argues that this ruling became the law of the case and was binding on the judge who conducted the trial.  Such is not the law.  Trial judges are required to rule on issues as they develop at trial.  If the development of the case requires reversal of an earlier ruling, it is the trial judge's duty to order that reversal.  The court's evidentiary rulings must be based on the case as it actually develops, not as it may be supposed prospectively that it will develop.  "A trial court is empowered to change a legal determination as long as it retains jurisdiction over the proceedings before it."  Turner v. Sheldon D. Wexler, D.P.M., P.C., 244 Va. 124, 128, 418 S.E.2d 886, 888 (1992).

Bottoms argues that the prejudicial effect of proof of his prior offenses outweighed its probative value.  We disagree.  That proof disclosed a continuing course of criminal conduct and explained Bottoms' motive in stopping and attempting to kill Trooper Campbell during Bottoms' crime spree.  Its probative value was significant.  The trial court did not abuse its

discretion in finding that the probative value outweighed any incidental prejudice to Bottoms.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "While evidence of other crimes is generally inadmissible due to its prejudicial nature, it is admissible 'in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial.'" Curtis v. Commonwealth, 13 Va. App. 622, 625, 414 S.E.2d 421, 423 (1992) (en banc). We find no abuse of the trial court's discretion in admitting evidence of Bottoms' previous offenses for the limited purpose of demonstrating his motive for attempting to kill Campbell.

### III.

Finally, Bottoms contends that the trial court erred in refusing to grant a mistrial when the Commonwealth referred to his prior unadjudicated crimes during the sentencing phase of the trial. He argues that the trial court's instruction to the jury to disregard those unadjudicated offenses was insufficient to overcome the resulting prejudice. We disagree.

"On appeal the denial of a motion for a mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial." Tomlinson v.

Commonwealth, 8 Va. App. 218, 223, 380 S.E.2d 26, 29 (1989) (quoting Harward v. Commonwealth, 5 Va. App. 468, 478, 364 S.E.2d 511, 516 (1988)).  Evidence of both the South Carolina carjacking and the Pennsylvania robbery and auto larceny was admitted during the guilt phase of the trial.  "[T]he jury, at the sentencing phase, 'would necessarily have access to the evidence presented in the guilt phase of the trial.'"  Gilley v. Commonwealth, 21 Va. App. 740, 744, 467 S.E.2d 312, 313 (1996) (citations omitted).  The trial court's cautionary instruction properly and sufficiently guided the jury's consideration of this evidence. We find no error in its denial of Bottoms' motion for a mistrial.

The judgment of the trial court is affirmed.

Affirmed.