COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Petty
Argued at Salem, Virginia


LIEBEN MARIE PATRICK

MEMORANDUM OPINION[*] BY

v.        Record No. 0214-07-3          JUDGE LARRY G. ELDER
                                        MAY 13, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Kelli C. Boyer, Assistant Public Defender (Emily Rowe Sitzler;
Office of the Public Defender; Rowe & Sitzler, P.C., on briefs), for
appellant.

Rosemary V. Bourne, Assistant Attorney General (Robert  F.
McDonnell, Attorney General, on brief), for appellee.


Lieben Marie Patrick (appellant) appeals from her jury trial convictions for two counts of

attempted second-degree murder and two counts of malicious wounding.  On appeal, she

contends the trial court erroneously admitted a sketch of the crime scene and erroneously

permitted the Commonwealth to inquire whether she had used cocaine on the day at issue.

Finally, she contends the evidence was insufficient to support her convictions because it did not

prove she acted with the requisite intent.  We hold the trial court committed no reversible error,

and we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

A.  ADMISSION OF THE DIAGRAM

Appellant contends the trial court erroneously admitted the diagram of the scene prepared by Officer Hogan because "the drawing was not to scale, was created from hearsay statements, was not relevant [and] was overly prejudicial to [appellant as it] amounted to an Officer['s] commenting on testimony by vouching for [witness] Rosanna Orange."  We hold the court did not abuse its discretion by admitting the diagram.

"The use of illustrative evidence," "including sketches and maps," "to clarify testimony is both proper and common."  Charles E. Friend, The Law of Evidence in Virginia § 13-11, at 536 (6th ed. 2003).  "The relevance of [such] evidence to the issues of the case must, of course, be established before such evidence is admissible."  Id. at 537.  Relevant demonstrative evidence, like any relevant evidence, "should be excluded if the prejudicial effect of the evidence outweighs its probative value[, but] [t]he fact that some prejudice may result does not justify automatic exclusion."  Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987) (citation omitted).

> In most instances, it is perfectly clear (or can be made perfectly clear) to the jury that the map or model is but a general representation, utilized as an explanatory device only.  Normally, the usefulness of such evidence to enable the jury to understand the facts better far outweighs any slight risk of prejudice.

Friend, supra, at 537.  "Admission of items of demonstrative evidence to illustrate testimonial evidence is . . . a matter within the sound discretion of a trial court."  Mackall v. Commonwealth, 236 Va. 240, 254, 372 S.E.2d 759, 768 (1988).

Applying these principles in Mackall, the trial court allowed the medical examiner to insert "a knitting needle into a styrofoam model of a human head to illustrate the course of [a] bullet."  Id. at 253-54, 372 S.E.2d at 768.  Over a defense objection to the admission of that

demonstrative evidence, the Supreme Court ruled that the witness' demonstration "probably shortened the time needed to describe the bullet's points of entry and exit and its course through the head and made it easier for the jury to understand the medical examiner's description" of the bullet's trajectory.  Id. at 254, 372 S.E.2d at 768.  Similarly in appellant's case, the use of the diagram to illustrate the lengths and distances Officer Hogan measured between certain points at the scene likely made it easier for the jury to understand his testimony about these various measurements.  The diagram bore a notation indicating that it was not to scale, and in addition to the diagram, the Commonwealth had admitted into evidence aerial photographs of the scene.  Manifestly, the jury knew the aerial photos provided an exact depiction of the scene, whereas the diagram was merely Officer Hogan's rough drawing made for the purpose of setting out certain measurements of the scene to give context to other evidence in the case.

Further, the fact that some of the locations identified on the diagram were established by the testimony of a witness other than Officer Hogan did not render the diagram inadmissible. The trial court sustained appellant's objection to the admission of the diagram when that other witness, Rosanna Orange, had not yet testified, and it admitted the diagram only after the Commonwealth had elicited the requisite foundational testimony from Orange subject to cross-examination by appellant.  The ruling in Manetta v. Commonwealth, 231 Va. 123, 340 S.E.2d 828 (1986), supports this result.

In Manetta, the Commonwealth offered evidence from two different witnesses.  The first found a purse later identified to be the victim's in a particular location, and the second had earlier observed the defendant discard a purse, which the defendant identified to him as the victim's, in a particular location.  Id. at 124-25, 340 S.E.2d at 829.  The Commonwealth then offered testimony from a sheriff, to whom each of the two witnesses had earlier pointed out the spot about which each testified.  It sought to have the sheriff testify about the proximity of the two

locations, which he measured as being two-tenths of a mile apart. Id. at 124-25, 340 S.E.2d at 829. The defendant objected on hearsay grounds "to any testimony by the sheriff which might embody the out-of-court declarations of [the second witness]" and also complained that the sheriff's reference to the second witness' statements would improperly bolster the statements of that witness, whose credibility was poor because of his criminal record. Id. at 125-27, 340 S.E.2d at 829-30. The Supreme Court held as follows:

> The trial court correctly reasoned that the evidence was not offered to corroborate [the second witness'] testimony or to prove that any of [the second witness'] assertions were true. [The second witness] had testified and had been vigorously cross-examined in the jury's presence. His credibility depended on his in-court testimony and his demeanor, which the jury had a first-hand opportunity to weigh. The sheriff's testimony was offered to prove an entirely different fact, *i.e.*, that two points in Botetourt County lay only two-tenths of a mile apart. The truth of that fact depended on the sheriff's personal familiarity with the area and measurements he had made. It was in no way dependent on upon the truthfulness of either [the first or the second witness].

> Manifestly, the sheriff could not describe the relationship between the two points on the ground unless he identified them by some reference which pertained to the case. . . . [H]e merely explained his points of reference in terms which would make sense in the context of the case. He did not lend his own credibility to vouch for the truthfulness of either declaration and did not corroborate their testimony in any way.

Id. at 128, 340 S.E.2d at 830-31; see id. at 128 n.3, 340 S.E.2d at 831 n.3 (recognizing that "[i]f the sheriff had been permitted to testify about the *details* of [the second witness'] statements to him, a different result might be reached" based on the improper admission of evidence amounting to a prior consistent statement).

In appellant's case, like in Manetta, witness Orange testified at trial and was subject to cross-examination. Not until after she had testified did the trial court admit the diagram containing measurements made by Officer Hogan, which were given context based on Orange's statements about where the impact occurred. To the extent appellant contended victim Angela

- 4 -

Amos identified a different point of impact at trial than Orange did, appellant had ample opportunity at trial to cross-examine both Orange and Amos about any discrepancy between the locations they identified. Appellant's counsel also elicited testimony from Officer Hogan that he had no independent knowledge of the locations on the diagram marked "approximate point of impact" and "final resting position" and that he in no way "vouch[ed] for the truth or v[e]racity of [Orange's] statements" about where certain things occurred. Under these circumstances, we hold the trial court did not abuse its discretion in admitting the diagram into evidence.

B.

CROSS-EXAMINATION ABOUT DRUG USE

Appellant contends the trial court erred in allowing the Commonwealth to question her about whether she had used illegal drugs on the day of the charged crimes. She contends the Commonwealth's question was inherently prejudicial, lacked probative value, and was not harmless. We hold any error was harmless.

Impeachment includes two overarching categories of evidence: evidence challenging the witness' veracity and evidence "which would tend to convince the jury that the witness's perception, memory, or narration is defective." Friend, supra, § 4-1. Under settled principles, evidence tending to show "impaired perception because of alcohol consumption" is not admissible to "impeach [a defendant's] character trait for telling the truth." Allstate Ins. Co. v. White, 257 Va. 73, 76, 510 S.E.2d 461, 463 (1999). However, "[i]t is [equally] well settled that the testimony of a witness may be impeached by showing that he was intoxicated at the time of the occurrence of events about which he testified [to the extent that] intoxication . . . bears upon his capacity for accurate observation and correct memory." Burnette v. Commonwealth, 172 Va. 578, 581, 1 S.E.2d 268, 269 (1939); see also, e.g., Smalley v. United States, 798 F.2d 1182, 1189 (8th Cir. 1986) (recognizing use for impeachment of evidence of "defective sensory or mental

- 5 -

capacity" resulting from drug or alcohol use). "Generally, the admissibility of [such] testimony . . . is within the sound discretion of the trial court." Burnette, 172 Va. at 581, 1 S.E.2d at 269.

Thus, here, evidence concerning whether and to what degree appellant was under the influence of alcohol or any other intoxicants at the time of the events for which she was on trial was directly relevant to the issue of the weight and credibility to be given her testimony about those events. It was within the court's discretion to allow a limited inquiry permitting the Commonwealth and the jury to evaluate the accuracy of appellant's perception of the events about which she testified. As we have previously recognized, however, "'[a] prosecutor should not ask a question which implies the existence of a factual predicate for which a good faith belief is lacking.'" Scott v. Commonwealth, 18 Va. App. 692, 694, 446 S.E.2d 619, 620 (1994) (quoting ABA Standards for Criminal Justice, Prosecution Function and Defense Function § 3-5.7(d) (3d ed. 1993)). Thus, the error, if one occurred, stemmed not from the *fact* of the Commonwealth's inquiry about drug and alcohol intoxication but instead from the *manner* in which it made the inquiry.

Nevertheless, we hold any error stemming from the original phrasing of the Commonwealth's question was harmless. In determining whether an error is harmless, we review "the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991) (en banc). Non-constitutional error is harmless "when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "'If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . .'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S. Ct.

1239, 1248, 90 L. Ed. 1557, 1566-67 (1946)).  Non-constitutional error is harmless if other evidence of guilt is so "overwhelming" and the error so insignificant by comparison that we can conclude the error "failed to have any 'substantial influence' on the verdict."  United States v. Lane, 474 U.S. 438, 450, 106 S. Ct. 725, 732, 88 L. Ed. 2d 814, 826 (1986) (quoting Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248, 90 L. Ed. at 1567).

In appellant's case, the Commonwealth, in its case-in-chief, had presented evidence from numerous witnesses that appellant and others at Amos's residence that afternoon were drinking, that appellant had consumed several beers while she was there, and that she carried a case of beer to her car as she left Amos's residence after the fistfight and immediately prior to the collision in which the victims were injured.  When appellant testified in her own behalf, she admitted that immediately before the fight between her and Amos began, appellant had "just gotten out of the bathroom," where she "had gotten sick."  On cross-examination, appellant responded, "[Y]es," to the question, "You went [to Amos's residence] by yourself to party with this group of men and Angela Amos, correct?"  Only after all that evidence had been admitted did the Commonwealth say, "You were smoking crack and drinking alcohol, correct?"

The Commonwealth had a firm factual basis for asking a leading question concerning whether appellant had been drinking alcohol because ample evidence established she had been doing so.  As to the portion of the question involving the use of cocaine, the trial court ruled the form of the question was improper and the Commonwealth immediately rephrased the question, "Ma'am, were you smoking crack that day?"  Appellant responded, "No, sir, I was not," and the Commonwealth made no further inquiry on that subject.  On the facts of this case, we hold that any error stemming from the Commonwealth's original question "'did not influence the [fact finder], or had but slight effect.'"  Clay, 262 Va. at 260, 546 S.E.2d at 732 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566).

C.

SUFFICIENCY OF THE EVIDENCE

On appellate review, we must examine the evidence in the light most favorable to the Commonwealth, and we may not disturb the jury's verdict unless it is plainly wrong or without evidence to support it. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The trier of fact is free to believe or disbelieve, in whole or in part, the testimony of any witness. Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). "No litigant is bound by contradicted testimony of a witness even though proffered by the litigant." Williams v. Commonwealth, 235 Va. 168, 176, 360 S.E.2d 361, 366 (1987). "'[W]hen two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him.'" Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 55, 419 S.E.2d 627, 629 (1992) (quoting Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922)). The conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only if this Court finds that the testimony accepted by the court was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984).

Under the common law doctrine of transferred intent, "if an accused attempts to injure one person and an unintended victim is injured because of the act, the accused's intent to injure the intended victim is transferred to the injury of the unintended victim, even though this wounding was accidental or unintentional." Crawley v. Commonwealth, 25 Va. App. 768, 773,

- 8 -

492 S.E.2d 503, 505 (1997); see Riddick v. Commonwealth, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983).

### 1. Attempted Second-Degree Murder

To establish appellant committed second-degree murder, the Commonwealth had to prove an unlawful killing that was committed with malice but without premeditation and deliberation. Perricllia v. Commonwealth, 229 Va. 85, 91, 326 S.E.2d 679, 683 (1985). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). "Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation." Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982). For example, malice may be inferred "from the deliberate use of a deadly weapon," Perricllia, 229 Va. at 91, 326 S.E.2d at 683, and "[a] motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife," Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984); see Luck v. Commonwealth, 32 Va. App. 827, 833-34, 531 S.E.2d 41, 44 (2000). "The finder of fact may also consider the 'defendant's conduct and words at the time of the [use of the deadly weapon] and thereafter,' including evidence of flight, to determine whether the act was accompanied by malice." Luck, 32 Va. App. at 833-34, 531 S.E.2d at 44 (quoting Slusher v. Commonwealth, 196 Va. 440, 445, 83 S.E.2d 719, 721 (1954)). Whether appellant acted with malice is a question of fact. Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).

"'To sustain a conviction for attempted murder, the evidence must establish both a specific intent to kill the victim and an overt but ineffectual act committed in furtherance of the criminal purpose.' An overt act must go beyond mere preparation to commit the crime."

Bottoms v. Commonwealth, 22 Va. App. 378, 382-83, 470 S.E.2d 153, 155 (1996) (quoting

Wynn v. Commonwealth, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987)).

Here, the evidence, viewed in the light most favorable to the Commonwealth, supported

the jury's finding that appellant was guilty of the attempted second-degree murder of victim

Angela Amos as defined in the applicable jury instructions, which were given without objection

and, thus, became the law of the case.[1]  See, e.g., Spencer v. Commonwealth, 240 Va. 78, 89,

393 S.E.2d 609, 616 (1990).  After Amos became angry with appellant for flirting with Amos's

boyfriend and asked appellant to leave her residence, appellant hit Amos in the head with a beer

---

[1] Those instructions provided as follows:

> The defendant is charged with the offense of attempting to
> kill Angela Amos.  The Commonwealth must prove beyond a
> reasonable doubt each of the following elements:  One, that the
> defendant intended to kill Angela Amos and, two, that the intended
> act was done with malice; three, that the defendant did a direct
> overt act toward the commission of the offense which amounted to
> the beginning of the actual commission of the murder; four, that
> the intent to kill was willful, deliberate, and premeditated.
>
> If you find from the evidence that the Commonwealth has
> proved beyond a reasonable doubt each of the above elements of
> the offense as charged then you shall find the defendant guilty . . . .
> If you find from the evidence that the Commonwealth has proved
> beyond a reasonable doubt the first three elements of the offense as
> charged, but you do not find that the act was done willful,
> deliberate, and premeditated [sic] then you shall find the defendant
> guilty of attempting to commit murder in the second degree . . . .

The jury was given a similar instruction regarding the child.

Thus, we need not consider whether the jury's acquittal of appellant for two counts of attempted first-degree murder based on a finding that appellant did not act with premeditation and deliberation conflicted with its verdict of guilt for two counts of attempted second-degree murder, which required proof of a specific intent to kill.  To the extent tension exists between these findings regarding appellant's mental state, appellant did not object to the instructions permitting the jury to make such findings or move to set aside the verdicts on that ground, and she did not raise the issue on appeal.  See Rules 5A:12, 5A:18; Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc) (holding the Court "will not" consider Rule 5A:18's good cause or ends of justice exceptions *sua sponte*).

bottle, and Amos retaliated by "[sticking] [appellant's] head through the window," hitting appellant with a beer bottle, pinning appellant to a table, and engaging in an extended fistfight. When appellant still refused to leave, Amos left the residence and said she was going to call the police to have appellant removed. As Amos walked up the road leading away from her residence, appellant said of Amos to one of her neighbors, "[T]hat bitch down there is crazy," and "[S]he's done beat the hell out of me." Appellant became angrier when she was unable to find anyone willing to take her home from Amos's residence so that she would not have to drive her own vehicle, which she knew had a bad clutch. As appellant entered her car despite the condition of the clutch, she was "hysterical" and repeatedly screamed, "I'm going to kill that bitch." Appellant then "floored" her car, with gears grinding, as she drove up the hill on Dean Drive toward the main road, in the direction Amos had departed on foot. As appellant crested the hill, traveling thirty to forty miles per hour in a ten mile-per-hour zone, Amos was walking to the side of the road with Rosanna Orange a short distance behind her. Orange saw appellant look toward her and Amos with a "really . . . hateful" look on her face. Appellant then jerked her steering wheel noticeably, causing the car to leave the roadway and graze Orange's left arm as appellant's car bore down directly on Amos and Orange's daughter, who tried unsuccessfully to run from the speeding vehicle. The testimony of Orange, coupled with the tire marks left in the grass by appellant's vehicle, supported a finding that appellant struck Amos and Orange's daughter when they were at a location in the grass more than six feet from the edge of the roadway. The record also supported a finding that appellant stared directly at Amos prior to the impact and made no effort whatever to apply her brakes. Immediately after the impact, appellant drove back onto the roadway, and as a bystander approached the scene to render aid, appellant yelled out her open window, "[T]hat B[itch] started it," and "took off" at a high rate of speed.

The evidence of appellant's statements and actions before, during, and after she struck Amos and Orange's daughter with her car supported a finding that appellant acted with the requisite malice and specific intent to kill Amos and that she engaged in an overt but ineffectual act in furtherance of that criminal purpose. Thus, the evidence was sufficient to support appellant's conviction for the attempted second-degree murder of Amos. Under the doctrine of transferred intent, as set out in a jury instruction given without objection, this same evidence supports appellant's conviction for the attempted second-degree murder of Orange's daughter.[2]

## 2. Malicious Wounding

Appellant was convicted for malicious wounding in violation of Code § 18.2-51, which provides that, "If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony." Appellant does not dispute the sufficiency of the evidence to prove that both victims, Amos and Orange's daughter, suffered "bodily injury" when appellant's vehicle hit them. Further, the same evidence that proved appellant acted with a specific intent to kill and with the malice necessary to support her conviction for the attempted second-degree murder of Amos also proved the requisite intent necessary to support appellant's conviction for the malicious wounding of Amos. And again, under the doctrine of transferred intent, this same evidence supports appellant's conviction for the malicious wounding of Orange's daughter.[3]

---

[2] This instruction, like the instruction on attempted second-degree murder, became the law of the case. See Spencer, 240 Va. at 89, 393 S.E.2d at 616. Thus, we need not consider whether the doctrine of transferred intent applies to an attempt to commit a crime or only to its actual commission. We also need not consider whether the doctrine applies when the intended victim is actually harmed, arguably leaving no intent to be "transferred."

[3] See supra note 2.

- 12 -

II.

For these reasons, we hold the trial court did not err in admitting the diagram of the scene.  We also hold the court did not err in permitting the prosecutor to inquire in a neutral fashion whether appellant had used drugs in the hours prior to the offenses for which she was on trial and that the prosecutor's original leading question on that issue, if error, was harmless.  We also hold the evidence, viewed in the light most favorable to the Commonwealth, supported appellant's convictions for attempted second-degree murder and malicious wounding.  Thus, we affirm.

<u>Affirmed.</u>