COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder and McClanahan
Argued at Alexandria, Virginia


TOBIAS ANTONIO CARRINGTON

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 2544-07-4              CHIEF JUDGE WALTER S. FELTON, JR.
                                                   MARCH 31, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              Lisa B. Kemler, Judge

            David J. Kiyonaga for appellant.

            Donald E. Jeffrey, III, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Following a jury trial, Tobias Antonio Carrington ("appellant") was convicted of

(1) second-degree murder, in violation of Code § 18.2-32; (2) use of a firearm in the commission

of murder, in violation of Code § 18.2-53.1; (3) malicious wounding, in violation of Code

§ 18.2-51; and (4) use of a firearm in the commission of malicious wounding, in violation of

Code § 18.2-53.1.  On appeal, he contends the trial court erred in finding the evidence at trial

sufficient to support his convictions.  He asserts that the testimony of his grandfather was

inherently incredible.  He also contends that the trial court erred in allowing the Commonwealth

to use a hearsay statement of his mother in cross-examining his expert witness.  Finding no error

on the part of the trial court, we affirm appellant's convictions.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, "[w]here the issue is whether the evidence is sufficient, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995). So viewed, the evidence established that, on April 2, 2006, appellant resided with his grandfather, Henry Carrington ("grandfather"). Shortly before 8:00 p.m. that evening, grandfather was in his bedroom, watching a movie with his friend Lee Timmons, when he looked up and saw appellant "standing in the door[way]" to his bedroom holding a "gun there on the side of his leg." When grandfather asked appellant, "'What are you doing with that gun in your hand,'" appellant "started walking towards [grandfather], . . . lifting the gun up" in his direction. Grandfather started to dive off the side of the bed opposite appellant when he "heard the gun go off." He was shot "in the back." Grandfather "heard the gun go off again, and . . . [saw Timmons'] head [fall] down between his lap." Grandfather then "heard the gun go off again." He heard what "had to have been [appellant] falling" to the floor. After struggling to get the phone, grandfather "called 911." He told the 911 operator that appellant had shot him and then killed Timmons. He also told the 911 operator that appellant killed himself. While he waited for emergency personnel to arrive, grandfather pulled himself toward the foot of the bed and saw appellant, who was bleeding from his head, trying to get up. Grandfather held appellant down as he repeatedly attempted to stand up. Grandfather also saw "[t]he gun" lying near appellant.

When police officers arrived, they found grandfather on the floor by the bed. The officers asked who shot him. Grandfather told them it was appellant. The officers found Timmons unresponsive, with a gunshot wound to the head, slumped over on the bed. They found appellant conscious with a gunshot wound to the head. They found a .38 special revolver lying near appellant on the bedroom floor. Forensic evidence revealed that all three bullets were

fired from the revolver. While no fingerprints were found on the revolver, appellant's DNA was found on the handle of the gun. Appellant admitted to police, as well as at trial, that the gun belonged to him. He also admitted he had the revolver on April 2, 2006 but was not sure if he still "had it on" his person when the shooting occurred.

At trial, grandfather told the jury that, on the morning of April 2, 2006, he and Timmons drank a "bottle of wine." He also told them that he and Timmons "smoked" a "[t]wenty dollar[]" "rock" of "cocaine" "between 11 to 12 . . . [i]n the middle of the day" and that they smoked a "blunt" of marijuana at "about one o'clock" in the afternoon. Grandfather testified that, for the past twenty years, he smoked "[t]wenty dollars" worth of cocaine a "couple of times per week." He also testified that he had not used any alcohol or cocaine in the afternoon or evening in question. When asked at trial if he was "high on cocaine or . . . drunk at th[e] time" of the shooting, grandfather responded, "No, I wasn't." When asked at trial if he "remember[ed] what happened," he testified, "Yes, I do."

Appellant testified to the jury that he fell asleep on grandfather's bed while grandfather and Timmons were in the living room and that he did not remember anything until he woke up in the hospital after the shooting. He testified that he "didn't shoot" grandfather, Timmons, or himself. He also testified that, since the day of the shooting, there are "thing[s] that always flash in [his] head . . . like [he] see[s] . . . grandfather laying down and then it's like [he is] being held down or something."

Forensic evidence showed that grandfather and Timmons had been shot at close range. It also demonstrated that appellant's head wound was inflicted at an upward angle. Appellant's blood was found spattered near the top of the bedroom doorframe. Gunpowder residue was found on appellant's right hand, as well as on both of grandfather's and Timmons' hands.

- 3 -

ANALYSIS

I. Witness Credibility

Appellant contends the evidence at trial was insufficient to convict him. He asserts that the testimony of the Commonwealth's only eyewitness, grandfather, was inherently incredible.

"'When a case, civil or criminal, is tried by a jury[,] . . . the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" Charity v. Commonwealth, 49 Va. App. 581, 585, 643 S.E.2d 503, 505 (2007) (quoting Code § 8.01-680). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder." Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732. Unlike "an appellate court which reviews only a cold record," Harris v. Woodrum, 3 Va. App. 428, 433, 350 S.E.2d 667, 670 (1986), the fact finder "has the opportunity to see and hear that evidence as it is presented," Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732. See also, Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955) ("The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them."). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Here, whether appellant shot grandfather and Timmons and then shot himself was for the jury to decide. The jury heard the testimony of grandfather, who was present when the shooting occurred, as to the events that occurred. It also heard forensic evidence, showing appellant's DNA on the pistol from which the shots were fired, as well as gunshot residue on his right hand. It heard grandfather's 911 call reporting the shooting, pleading for help, and identifying appellant as the shooter. Appellant admitted to the jury that he had been present in the bedroom

- 4 -

at the time of the shooting and that he may have "had [the pistol] on [his person] still." He also testified to the jury that he was asleep at the time the shooting occurred and did not remember anything.

We will not disturb the factual finding of a jury on issues of witness credibility unless we "'find[] that [the] . . . testimony [accepted by the jury] was inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (en banc) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)) (internal quotation marks omitted). For testimony to be inherently incredible as a matter of law, "it 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)).

Appellant argues that grandfather's admission that he had been drinking and using drugs prior to the shooting rendered his testimony inherently incredible.

"It is well settled that the testimony of a witness may be impeached by showing that he was intoxicated at the time of the occurrence of events about which he testified. However, intoxication only bears upon his capacity for accurate observation and correct memory." Burnette v. Commonwealth, 172 Va. 578, 581, 1 S.E.2d 268, 269 (1939) (citations omitted). "'The fact that a witness was intoxicated at or about the time of the events concerning which he testifies . . . does not render him absolutely unworthy of credit . . . .'" Id. at 582, 1 S.E.2d at 269 (quoting 70 Corpus Juris, Witnesses, § 924, p. 764). See also, Durant v. Commonwealth, 7 Va. App. 454, 463, 375 S.E.2d 396, 401 (1988) ("'permit[ting] a trial judge presiding over a trial by jury to exclude a witness on account of matters merely affecting his credibility would be a

novelty in American jurisprudence'" (quoting State v. Zeezich, 210 P. 927, 928-29 (Utah 1922))).

Appellant also argues that the Commonwealth's evidence failed to exclude all reasonable hypotheses of innocence because "there was another person or persons in the apartment who fled the apartment after the shooting"[1] and that there was a high "probability that [appellant] did not attempt suicide but was a victim of an attempted homicide." By finding appellant guilty, the jury rejected that alternative hypothesis. When a jury hearing evidence discards evidence presented in support of an alternative hypothesis of how an event occurred, we are bound by that finding of fact. See Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997) ("Whether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." (citation omitted)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

From the record on appeal, we conclude the testimony of grandfather, an eyewitness to the events at issue, identifying appellant as the person who shot the pistol that wounded him and killed Timmons, was not inherently incredible as a matter of law. The jury determined that appellant was the person who shot grandfather and killed Timmons before wounding himself. See Kelly v. Commonwealth, 42 Va. App. 347, 354-55, 592 S.E.2d 353, 357 (2004) ("When the Commonwealth offers direct evidence from eyewitnesses whose testimony is not inherently incredible, the jury may accept that testimony as credible and reject all conflicting evidence, thereby determining, in essence, that no reasonable hypotheses of innocence remain.").

---

[1] While the evidence showed that Antonio Love, who recently had a dispute with grandfather, was seen exiting the apartment building when police arrived, the jury made a factual finding that appellant was the shooter.

Accordingly, we hold the trial court did not err in finding the evidence sufficient as a matter of law to support appellant's convictions.

## II. Mother's Hearsay Statement

Appellant contends the trial court erred in permitting the Commonwealth to question his expert witness regarding a "hearsay statement made by appellant's mother." During his cross-examination by the Commonwealth, appellant was asked if he remembered calling his mother just before the shooting occurred. Appellant initially denied calling his mother, but later testified she told him that he did call her and that during that conversation he told her, "this is going to hurt you more than it's going to hurt me." He then testified that his mother "wouldn't lie about it." Appellant did not object to this line of questioning, or to the admissibility of the conversation his mother said she had with him. For the first time on appeal, he argues that his mother's hearsay statement about "hurt[ing] [her] more than . . . [him]" was highly prejudicial and outweighed any probative value it may have had on whether he shot grandfather and himself.

Dr. Gloria Morote, an expert neuropsychologist, testified for appellant. She testified that, based on her evaluation and testing of appellant almost a year after the incident and talking with his mother, his sister, and his girlfriend, appellant "had not suffered from any disorders that would place him at high risk for suicide." During its cross-examination of Dr. Morote, the Commonwealth asked if it would be clinically significant to her if, just prior to the shooting, appellant had told a close family relative, "'This is going to hurt you more than it's going to hurt me.'" Appellant objected that there was nothing in evidence that supported the Commonwealth's question. When reminded that appellant had earlier testified that his mother told him he did make the statement and that "she wouldn't lie about it," the trial court overruled the objection.[2] The trial

---

[2] Appellant's mother was subpoenaed by the Commonwealth as a witness, but was not called by either the Commonwealth or appellant to testify.

court stated, "Dr. Morote[] testified that . . . she base[d] her conclusion . . . on interviews with family members, including [appellant's] mother . . . . So I think the question is proper." Dr. Morote then testified that appellant's mother had not told her about the conversation she had with appellant just prior to the shooting.

On this record, we cannot conclude that the trial court erred in permitting the Commonwealth to cross-examine appellant's expert as to whether the statement made by appellant to his mother shortly before the shooting would have affected her opinion that appellant was not suicidal at the time of the shooting. The jury heard appellant's testimony, initially denying making the statement, but then admitting that his mother told him he made it and that she would not lie about that. Moreover, appellant failed to object when the evidence of appellant's statement to his mother was first elicited and heard by the jury. Appellant thereby waived any objection to the Commonwealth's later use of that statement in questioning his expert witness as to the basis for her opinion that appellant had not displayed suicidal tendencies prior to the shooting. See Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986) ("In order to be considered on appeal, an objection must be timely made and the grounds stated with specificity. To be timely, an objection must be made when the occasion arises – at the time the evidence is offered or the statement made." (citation omitted)). As the evidence was previously before the jury, without objection, the trial court did not abuse its discretion in permitting the Commonwealth to ask Dr. Morote if she would have considered appellant's statement "to be clinically significant." See Scott v. Commonwealth, 18 Va. App. 692, 693-94, 446 S.E.2d 619, 619 (1994) ("The scope of cross-examination in general, and the extent of testimonial impeachment in particular, are left to the sound discretion of the trial court and are not subject to review unless plainly abused.").

From the record on appeal, we conclude that credible evidence presented at trial proved that appellant shot his grandfather and killed Timmons and that the trial court did not err in permitting the Commonwealth to cross-examine appellant's expert witness as to the impact on her conclusion that appellant was not suicidal based on appellant's statement to his mother just prior to the shooting. Accordingly, we affirm appellant's convictions.

<u>Affirmed.</u>