# Richmond

## JOSEPH HARVEY GRANBERRY v. COMMONWEALTH OF VIRGINIA.

January 14, 1946.

Record No. 3040.

Present, All the Justices.

The opinion states the case.

*Herman A. Sacks,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *V. P. Randolph, Jr., Assistant Attorney General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The only assignment of error stated in the record in this case is that the evidence is not sufficient to sustain the finding that the accused was guilty of an attempt to commit statutory rape.

Jean Audrey Jones, an 11-year-old colored girl, testified that, about 11:00 A. M. on Saturday, March 24, 1945, while she was walking on East Princess Anne Road in Norfolk, the accused stopped her and asked her to get in his

automobile. When she refused, the accused drew a knife and forced her into his car. After driving around town for some time, the accused stopped his car near the rear of a building occupied by the Building Supply Corporation on the corner of Monticello Avenue and 20th Street. The accused and the girl got out of the car and went to a nearby vacant lot covered with weeds and bushes. Jean was told to lie down, pull up her dress and take down her pants, which she did. While the accused was on his knees unbuttoning his pants, she jumped up and ran through a small opening in the bushes and into the building occupied by the Building Supply Corporation. She immediately told the colored maid, whom she found there, what had happened. Police Officer Murden and a shore patrol officer arrived on the scene in response to a police call from the Building Supply Corporation.

Murden testified that Jean told him and the patrol officer of the attack upon her, and, in addition, said that two coins, one about the size of a quarter and the other the size of a dime, were over the windshield of the car used by the accused, that the handle of the gear shift was broken and that a hammer and a bottle were in the rear.

The officers took Jean in a police car and, under her direction, retraced the route over which the accused had taken her. Then Jean was carried to police headquarters. Upon being shown the photographs of seven men, she designated the photograph of the accused as her assailant. Thereupon three officers, with Jean, in a police car began a search for the accused, who was known by sight to Officer Curles. This officer saw the accused on the sidewalk and immediately placed him under arrest. When the accused was brought to the police car where Jean was sitting, she again identified him as the party who made the attack upon her. The accused told the officers that his car was in the repair shop, but a few moments later it was found parked near the Longshoremen's Hall. On examination, the officers found the two coins above the windshield, the broken handle of the gear shift, and the hammer and

the bottle of oil or wax in the rear, as described by Jean when she was first questioned about the matter.

The accused testified that he had never seen Jean before he was arrested and brought to the police car in which she was sitting, and that she had never been in his automobile. He denied any knowledge of the alleged attack. He admitted that he told the officers his automobile was in the repair shop, and stated that he did this because he was afraid, if he told them where the automobile was, they would ascertain that he had the wrong license plates thereon and would arrest him for using improper licenses.

The accused contends that the evidence of Jean is incredible because, (1) no normal person would attempt with a knife to force an 11-year-old child into his automobile in broad daylight on a street at a time when people were constantly passing to and fro, and that, even if such an attempt were made by a stranger, the screams of a normal child under such circumstances would bring immediate help, and Jean admits that she at no time screamed or called for help; (2) if Jean were forced into the automobile as claimed, then she would have been too scared to notice the foreign coins on the windshield and other details in the car; (3) the manner of her escape as stated was impossible since a strong man, as intent as it is claimed the accused was to accomplish his purpose, would have had no trouble in catching the child as she jumped up to escape.

■ ■ No normal man would attempt the dastardly crime on an 11-year-old child. One who does is abnormal and lacking in discretion, common sense and judgment. The lack of these attributes in a person who has committed a crime is usually the cause of his apprehension and conviction. The perception of children and their descriptions of what they have seen frequently are surprisingly accurate. It does not appear that, after the child got into the automobile, the accused did anything more to frighten her until she was led or forced into the vacant lot, and then within a few moments she fled from him. She immediately reported the occurrence to a member of her own race. The police offi-

cers who came to her rescue were able, from her description of the automobile and her identification of the accused from his picture, to find and apprehend him. To sustain the contention of the accused, this court would have to disregard all the testimony of the witnesses for the Commonwealth and accept the unsupported and uncorroborated testimony of the accused. The finding of fact of the trial court, sitting without a jury, on conflicting evidence, is binding and conclusive upon this court.

The accused further contends that, conceding Jean's testimony to be true, the acts alleged did not amount to an attempt.

The indictable offense for an attempt to commit a crime consists of an intent to commit a felony and the doing of some direct act towards its consummation without actually committing the crime itself. It need not be the last proximate act to the consummation of the crime in contemplation, but it is sufficient if it be an act apparently adapted to produce the result intended. *Glover* v. *Commonwealth*, 86 Va. 382, 385, 10 S. E. 420; *Merritt* v. *Commonwealth*, 164 Va. 653, 180 S. E. 395; *Rainey* v. *Commonwealth*, 169 Va. 892, 895, 193 S. E. 501; *Mullins* v. *Commonwealth*, 174 Va. 477, 5 S. E. (2d) 491; *Taylor* v. *Commonwealth*, 180 Va. 413, 416, 23 S. E. (2d) 139.

It is impossible to formulate a rule which will be a definite and unbending guide in determining what acts constitute preparation and what acts amount to legal attempts. "In a general way, however, it may be said that preparation consists in devising or arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made." 14 Am. Jur., 816.

While the overt acts of the accused, detailed in the evidence, were not the last proximate acts necessary to the consummation of the crime, they were direct overt acts well calculated to accomplish the result intended.

*Affirmed.*