# Richmond

E. E. Slusher v. Commonwealth of Virginia.

October 11, 1954.

Record No. 4279.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Burton & Burton, Frank P. Burton* and *T. W. Messick,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Francis C. Lee, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

This case is before us on a writ of error to a judgment entered upon the verdict of a jury convicting E. E. Slusher, sometimes hereinafter referred to as the defendant, upon an indictment which charged that he "did attempt to maliciously, unlawfully and feloniously assault, cut and wound one Thomas O. Alexander with a knife, with the intent to maim, disfigure, disable and kill" him. In accordance with the jury's verdict the defendant was sentenced to confinement in the state penitentiary for the period of one year.

The main assignment of error challenges the sufficiency of the evidence to sustain the verdict finding the defendant "guilty of an attempt to maliciously wound."

The alleged offense was committed during an altercation between Alexander and Slusher in the town of Stuart in Patrick county. Alexander conducted a grocery store in the town next to a vacant lot owned by the defendant, Slusher. The two men had known each other and enjoyed friendly business relations for six or seven years. The Slusher lot had been leased to a local business concern for a term which expired on May 8, 1953. Prior to the altercation Alexander had approached Slusher with the view to renting the lot as parking space for his (Alexander's) cus-

tomers. Slusher was unwilling to enter into such an arrangement, stating that he intended to use the property as a public rental parking lot. Alexander, who had previously parked his car on the lot, continued to do so with Slusher's knowledge and consent, although the parties had reached no agreement as to the terms and conditions under which this should be done.

On Saturday morning, May 9, between 10:30 and 11 o'clock, Slusher, who conducted a restaurant some distance away, came to the lot and found several cars including that of Alexander parked thereon. Slusher parked his car on the street so as to obstruct the entrance to, and exit from, the parking lot. He placed a sign on his car notifying those whose vehicles were on the lot to see him before removing them. At the lunch hour, when Alexander attempted to move his car from the lot he found the exit blocked by the Slusher car.

Later during the day Alexander saw Slusher standing on the sidewalk near the lot and approached him, as he says, with the intention of discussing the rental of a parking space. What then occurred is thus related by Alexander: "Mr. Slusher was on the sidewalk and I said to myself, 'Now is as good a time as any to ask him about the lot,' so I tapped him on the leg and said, 'Hello, Mr. Ed.' He said, 'Whose car is this? Is it your car?' and I said, 'Yes.' He said, 'Come over here,' so I went about 15 or 20 feet on the old hotel property. I followed him over there and when he turned around facing me I knew he was mad. I said, 'Mr. Ed, take it easy.' He had reached in his pocket and pulled out a knife and told me to get off the property and when he did that I started to walk off the property. He caught me and pushed me over the fender of my car and had his left hand around my neck and the knife was in his right hand. Moyer Vaughan came up and grabbed his arm." Before Slusher was thus interrupted by Vaughan, Alexander said, "he had the knife in his hand, holding it up."

Richardson, another witness for the Commonwealth, thus

described the incident: "Mr. Slusher grabbed Mr. Alexander and pushed him backwards toward his car. Sometime just prior to the actual struggle Mr. Slusher produced a knife and had Mr. Alexander by the throat and pushed him back across the front fender and hood of his car. He held him with his left hand and had the knife in his right." After he had released Alexander, Slusher exclaimed, "God damn you, if you ever set your foot on my property again, I'll kill you."

DeHart testified that after Slusher had "motioned" Alexander "to come back in the lot," Slusher "opened his knife and started at him and pushed him back over the car, saying, 'God damn you, I'll kill you.'" Other witnesses for the Commonwealth testified to the same effect.

There was no evidence that Slusher cut or struck at Alexander with the knife, but, as Alexander said, he was "holding it up" in a threatening manner, and as another witness said, was making "threatening motions" with it.

On the same day, after his arrest, Slusher stated to the sheriff that he "intended to cut" Alexander and "would have cut him" had not Vaughan prevented his doing so. When the sheriff again asked Slusher, in the presence of C. D. Godsey, whether he (Slusher) "really meant to cut" Alexander, Slusher replied, "You damn right I did and if they hadn't grabbed my arm I would have cut him. * * * I'll get the son-of-a-bitch yet."

In 14 Am. Jur., Criminal Law, § 65, p. 813, we find this clear definition: "An attempt to commit a crime is any overt act done with the intention to commit the crime and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime."

We have frequently pointed out that an attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) the direct, ineffectual act done toward its commission which must reach far enough toward the accomplishment of the desired result to amount to the

commencement of the consummation. *Thacker* v. *Common-wealth*, 134 Va. 767, 769, 114 S. E. 504; *Merritt* v. *Common-wealth*, 164 Va. 653, 657, 180 S. E. 395, 397; *Mullins* v. *Commonwealth*, 174 Va. 477, 478, 479, 5 S. E. (2d) 491, 492; *Granberry* v. *Commonwealth*, 184 Va. 674, 678, 36 S. E. (2d) 547, 548; *Ingram* v. *Commonwealth*, 192 Va. 794, 802, 66 S. E. (2d) 846, 851.

In the present case the acts and words of the defendant at the time, as well as his statements thereafter, clearly show the necessary intent. Indeed, the brief on behalf of the defendant does not seriously challenge the sufficiency of the proof of this element.

The only question is whether there is proof of the overt act, the other element of the attempt. The gist of the argument on behalf of the defendant is that although Alexander was helpless and at his mercy, the defendant did not cut or strike at him with the knife. Hence, it is said, the evidence falls short of showing an "attempt to cut."

We cannot agree with this contention. We think the evidence shows that the acts of the defendant went beyond a mere preparation to carry out his intention to cut Alexander. As we have held, the overt act need not be the last proximate act prior to the consummation of the crime attempted to be perpetrated. It is sufficient if it be an act apparently adapted to produce the result intended. *Granberry* v. *Common-wealth*, *supra*, 184 Va., at page 678, 36 S. E. (2d), at page 548.

There is ample evidence to support the finding by the jury that the defendant attempted to cut Alexander and stopped short of that result only because of the intervention of third persons. Indeed, the defendant so told the sheriff on two occasions.

Nor are we convinced by the argument that the proof falls short of showing that the defendant's intent was malicious, and that at most it shows that he was guilty of attempted unlawful cutting rather than attempted malicious

cutting. By proper instructions this issue was submitted to the jury and decided adversely to the defendant.

In our opinion the evidence supports this finding. The defendant's conduct and words at the time of the affray and thereafter clearly show express malice. Moreover, malice may be inferred from his deliberate attack with a deadly weapon. *Floyd* v. *Commonwealth*, 191 Va. 674, 683, 62 S. E. (2d) 6, 10, and authorities there cited. Such evidence of malice, both express and implied, coupled with the fact that his attack on Alexander as shown by the Commonwealth's evidence was unprovoked and without excuse, is sufficient to sustain the verdict. *McElroy* v. *Commonwealth*, 153 Va. 877, 889, 149 S. E. 481; *Shackelford* v. *Commonwealth*, 183 Va. 423, 427, 32 S. E. (2d) 682, 684.

Error is assigned to the action of the lower court in granting Instruction No. 2 which told the jury that if they found the defendant guilty of "attempted unlawful wounding," as charged in the indictment, they should "fix his punishment at not less than one year nor more than five years in the penitentiary or by confinement in jail not exceeding twelve months."

The argument is that the punishment for "attempted unlawful wounding" is governed by Code, § 18-8(4), as amended by Acts 1952, ch. 256, p. 363, which reads as follows: "If the offense attempted be a noncapital felony punishable by confinement in the penitentiary for a period of less than five years, he shall be confined in the penitentiary for a period of one year, or, in the discretion of the jury or the judge trying the case, be confined in jail not exceeding twelve months."

It will be observed that the statute relied on applies where the attempted offense is "punishable by confinement in the penitentiary for a period of *less than five years*." (Italics supplied.) It is elementary that the word "punishable," as here used, means the maximum punishment which may be imposed. *Benton* v. *Commonwealth*, 89 Va. 570, 572, 573, 16 S. E. 725; *Quillin* v. *Commonwealth*, 105 Va. 874, 881,

882, 54 S. E. 333, 8 Ann. Cas. 818; *Fletcher* v. *Commonwealth*, 163 Va. 1007, 1012, 175 S. E. 895, 95 A. L. R. 1112. Under Code, § 18-70, the maximum punishment for "unlawfully, but not maliciously," wounding is five years. Hence, Code, § 18-8(4), relied on, does not apply.

The punishment for the offense of attempted "unlawful wounding" is governed by Code, § 18-8(2), to which the instruction conforms. That paragraph reads as follows: "If the offense attempted be a noncapital felony, he shall be confined in the penitentiary not less than one nor more than five years, or in the discretion of the jury or the judge trying the case be confined in jail not to exceed twelve months."

The indictment found by the grand jury charged the defendant with the "attempt to maliciously, unlawfully and feloniously assault, cut and wound * * * with the intent to maim, disfigure, disable *or* kill." (Italics supplied.) During the progress of the trial the defendant pointed out that the intent should be charged in the conjunctive. The trial court allowed the indictment to be amended to meet this challenge by changing the word "or" to "and." Such action of the trial court is assigned as error. This assignment is entirely without merit. The record shows that the indictment, as amended, was read to the defendant and he again entered a plea of not guilty. Code, § 19-151, in terms sanctions such procedure.

On the whole we find no error in the proceedings and the judgment is

*Affirmed.*