COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Annunziata and Bumgardner
Argued at Salem, Virginia


ROBERT TATE WESCOAT

MEMORANDUM OPINION[*] BY
v.    Record No. 1256-98-2          JUDGE SAM W. COLEMAN III
                                      FEBRUARY 15, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

Scott Goodman for appellant.

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General;
Thomas D. Bagwell, Senior Assistant Attorney
General, on brief), for appellee.


Robert Tate Wescoat was convicted in a jury trial of

distribution of marijuana to a juvenile in violation of Code

§ 18.2-255 and attempted distribution of marijuana to a juvenile

at least three years his junior in violation of Code § 18.2-26.

On appeal, Wescoat argues that the evidence was insufficient to

support his conviction for attempted distribution of marijuana.

We disagree and affirm the conviction.

BACKGROUND

Viewed in the light most favorable to the Commonwealth, the

evidence established that on April 5, 1997, Wescoat gave

_____

    * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

approximately two ounces of marijuana to Ben Holt to sell. Holt was seventeen years old at the time and had sold marijuana for Wescoat during the preceding months. After being arrested trying to sell the drugs at Albemarle High School, where he was a student, Holt agreed to assist authorities in conducting a controlled buy from Wescoat.

Holt participated in two tape-recorded telephone calls with Wescoat where, according to Holt, Wescoat agreed to give Holt more marijuana to sell. Holt asked Wescoat how much marijuana Wescoat could obtain. Holt stated that he would need a "half" or a "QP." Wescoat informed Holt that a "QP" would cost $450. Holt and Wescoat agreed to meet on April 21, 1997. Just prior to the meeting, Wescoat informed Holt that he would bring a "half" to the meeting, the amount Wescoat had with him at the time, and that he would "go into town and pick up some more and give it to [Holt]."

That evening Wescoat and Holt met at the Forest Lakes Food Lion. During the meeting, Holt gave Wescoat money that he owed Wescoat for the two ounces of marijuana that Holt had previously purchased. The recording of the meeting proved that Wescoat was mistaken about the amount of marijuana that Holt had wanted to purchase. Wescoat informed Holt that he would sell him whatever he needed.

Wescoat was arrested in the parking lot and was searched. The officers found a small amount of marijuana (4.7 grams) on

Wescoat. In Wescoat's vehicle, the officers found the marked money Holt had given to Wescoat for the two ounces of marijuana Wescoat previously sold Holt.

Jefferson Area Drug Enforcement Task Force Sergeant Michael Dean was qualified as an expert in the vernacular of the drug trade and he testified that "QP" means a quarter pound of marijuana and that a "half" means a half pound of marijuana.

Wescoat testified that he had never sold drugs to Holt. Wescoat admitted that he was one of the people involved in the taped telephone conversations, but he stated that his comments concerning his ability to obtain marijuana was merely bragging. Wescoat testified that the marijuana found on him during the search was for his personal use.

## ANALYSIS

Wescoat argues that although the tape recording of the meeting indicates that he would supply additional marijuana to Holt, no direct act was committed by Wescoat toward consummation of the sale of marijuana. He argues that, even assuming a large amount of drugs existed elsewhere that he intended to obtain for Holt, no evidence existed that he committed an act toward obtaining the drugs.

On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences fairly

deducible therefrom.  See Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).

"'An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission.'"  Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 607-08 (1995) (citation omitted).  A direct, ineffectual act, done toward commission of an offense need not be the last proximate act toward completion of the offense, but "it must go beyond mere preparation and be done to produce the intended result."  Tharrington v. Commonwealth, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986).  In distinguishing acts of mere preparation from acts that constitute an attempt, "'it may be said that preparation consists [of] . . . arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made.'"  Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946) (quoting 14 Am. Jur. Criminal Law § 67 (1938)).  Moreover, where intent has been shown, any slight act done in furtherance of this intent will

constitute an attempt.  See Tharrington, 2 Va. App. at 494, 346 S.E.2d at 340.

Here, the evidence proves that Wescoat intended and attempted to distribute marijuana to Holt for further distribution.  Wescoat and Holt discussed on three separate occasions when and how much marijuana Wescoat could obtain.  Wescoat and Holt met at the prearranged location for the transfer of marijuana.  Wescoat had marijuana with him.  At the meeting, it became apparent that Wescoat did not have the quantity of drugs with him that Holt wanted to purchase.  Wescoat had mistakenly thought that Holt wanted a half ounce, which Wescoat stated he was prepared to sell Holt at the time.  However, Wescoat agreed to obtain a substantial amount of marijuana for Holt and instructed Holt to call him later that evening.  Wescoat was arrested before he left the parking lot.

The evidence proves that not only did Wescoat and Holt negotiate a sale and prearrange a meeting to consummate the sale, Wescoat met Holt and intended and attempted to sell the amount of marijuana that he had with him.  Except for the misunderstanding that Wescoat had regarding the amount of drugs that Holt wanted to purchase, the sale would have been consummated.  Going to the parking lot with marijuana that he intended to sell to Holt as per their prior agreement

constituted an attempt by Wescoat to sell marijuana to a juvenile.

We, therefore, find the evidence sufficient and affirm the conviction.

<u>Affirmed.</u>