COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Elder and Petty
Argued at Salem, Virginia


FAIRLEIGH DAVID SMALL, S/K/A
  FARLEIGH DAVID SMALL
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1511-08-3                        JUDGE LARRY G. ELDER
                                                    DECEMBER 15, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Isaac St. C. Freeman, Judge

R. Wayne Austin (Scyphers & Austin, P.C., on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


       Fairleigh David Small (appellant) appeals from his jury trial conviction for attempted

malicious wounding in violation of Code §§ 18.2-26 and -51.  On appeal, he contends the

evidence was insufficient to support his conviction because it failed to disprove the reasonable

hypothesis that he acted with the intent merely to frighten the victim and also did not establish an

overt act necessary to prove an attempt.  We hold the evidence was insufficient to prove

attempted malicious wounding.  Thus, we reverse and remand for appropriate further

proceedings consistent with this opinion if the Commonwealth be so advised.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

BACKGROUND

In October 2006, the education director of Abingdon's William King Arts Center engaged in some restructuring and shifting of duties among employees. One of the center's longtime employees was affected by and unhappy with those changes. That employee expressed her unhappiness over those changes to her neighbor. On a subsequent occasion, the neighbor's husband, appellant, asked the unhappy employee about her "problems . . . at work."

On October 24, 2006, described as a "really, really cold" day, a man later identified as appellant entered the arts center wearing large, dark sunglasses, "a full balaclava style face mask" and dark clothing. Appellant proceeded to an area of the first floor marked "education office," which housed the office of the education director. Outside the education director's office was a plaque bearing her name. When another employee brought appellant's unusual attire to the education director's attention, she radioed a security guard "that there was somebody in the hall that he might want to check out," and she returned to her office.

The guard greeted appellant as he greeted all visitors, escorted him to the second floor gallery area, and gave him a brief introduction to the collection. The guard watched as appellant looked at the paintings and visited the museum store. Appellant never removed his face mask or other clothing. The guard and another employee attempted to engage appellant in conversation, but he gave very brief answers. The guard then escorted appellant to the staircase leading to the first floor, where both the educational offices and the center's exit doors were located. The guard waited at the main desk on the second floor and listened for the door chime to ensure appellant had left. After five to ten minutes, when the guard had not heard the door chime, he walked around the control desk to look at the security cameras. Before he reached the cameras, however, he heard the education director scream from the first floor.

Before the education director screamed, she had been working in her first-floor office with the door open when she looked up and saw the still-masked man, appellant, standing outside her office door, in view of her name plaque. Appellant came closer to her and said, "So you're Mary Ruth Musick?" and she responded, "Yes." Appellant then "stepped into [her] area" and asked her if she would "go back into [her inner] office and speak with him." She did not do so and said, "How can I help you? What do you need?" Appellant stood there for a few seconds fidgeting with some museum brochures he was holding and then said, "I understand that you've made some staff members very unhappy." Musick was not sure how to respond and just said again, "How can I help you?" Appellant said, "Your management style sucks," and began to reach for his right jacket pocket. Musick thought he might have a gun and "instinct[ively]" grabbed his hand. She could feel his hand under his jacket and said "he had his hand on something hard" that "felt like the handle of a gun." Musick held on tightly, and as appellant struggled to get away from her, they moved into the office hallway and then into the main hallway. Musick "didn't want to let go," but appellant "bent [her] fingers back, scratched [her], and stepped on [her] foot," after which she "hit[] [her] head on the banister" of the stairs and "fe[lt] [appellant] slipping away." Appellant went out the back door, which was "a full glass door," but continued to "stand[] there" and "again . . . reache[d] for his pocket." Musick crouched and ran.

The center's security guard pursued appellant and caught up with him at the driver's side of a car just as the police arrived. The vehicle appellant stood beside, which was relatively clean, had mud smeared on the license plate and the "Camry" label, obscuring them both. The police removed a gun from a holster at appellant's waist. Appellant had no identification on his person, and he was carrying only a car key and a wedding ring. One of the officers asked appellant

whether he had a concealed weapons permit, and he responded, "Yes," but then indicated he had "nothing more to say" and made no additional statements to police.

Appellant was indicted and tried for attempted malicious wounding.[1] In appellant's jury trial, one of the arresting officers testified that when he seized the semi-automatic weapon from appellant in the arts center parking lot, the magazine in the weapon contained the "full" number of thirteen bullets, but no bullet was in the chamber. The officer explained that because no bullet was in the chamber, the gun could be "fired" repeatedly but no bullet would be expelled. In order to move a bullet into the chamber, "somebody [would] have [to] pull[] the [gun's] slide back." The gun was equipped with a safety, which, when engaged, made it physically impossible to pull the slide back to chamber a bullet. The officer could not recall whether the safety was engaged when he seized the weapon.

Musick testified that she sustained "[l]ots of bruising" as a result of the struggle and said she "felt what [appellant] said . . . threatened [her]." She confirmed that appellant did not hit her, grab her, or display a gun and that her only physical contact with him was after she grabbed his arm. She also confirmed appellant made no statements indicating he planned to make physical contact with her or to injure her.

Appellant moved to strike the Commonwealth's evidence, arguing that he made no verbal threats and committed no overt act to prove the requisite intent to commit malicious wounding rather than simply to scare the victim. Appellant argued in the alternative that the jury should be instructed on an offense "no more than assault and battery." The court denied the motion. Appellant presented no evidence and renewed his motion to strike, which the court again denied.

---

[1] Appellant also was indicted and tried for violating Code § 18.2-308.1. Following the close of all the evidence, the trial court granted appellant's motion to strike on that charge, and only the attempted malicious wounding charge went to the jury.

After the jury returned a verdict of guilty on the attempted malicious wounding indictment, appellant moved to set aside the verdict, again arguing that the evidence failed to exclude the reasonable hypothesis that his only intention was to frighten Musick. The court denied the motion, and, following sentencing, appellant noted this appeal.

## II.

## ANALYSIS

When considering the sufficiency of the evidence on appeal to support a criminal conviction, this Court views the evidence in the light most favorable to the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The jury's verdict will not be set aside unless it appears that it is plainly wrong or without supporting evidence. Code § 8.01-680; Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

"Malicious . . . wounding requires that the accused has the specific intent to 'maim, disfigure, disable or kill' the victim of the attack." Commonwealth v. Vaughn, 263 Va. 31, 35, 557 S.E.2d 220, 226 (2002) (quoting Code § 18.2-51). A criminal attempt requires an intent to commit the crime coupled with a direct, though ineffectual, act towards its commission. Coles v. Commonwealth, 270 Va. 585, 589, 621 S.E.2d 109, 111 (2005).

## A.

## INTENT

Intent, like any element of a crime, may be proved by circumstantial evidence, see Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), such as a person's conduct and statements, Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of

guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant. Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997). The fact finder is permitted to draw reasonable and justified inferences from proven facts, including the inference "that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998). However, "[w]hen the facts are equally susceptible to more than one interpretation, one which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt an inculpatory interpretation." Id. at 706, 508 S.E.2d at 356.

Here, as appellant argues, we hold the evidence was insufficient to prove beyond a reasonable doubt that he committed attempted malicious wounding because it failed to exclude the reasonable hypothesis that he intended only to scare the victim and not to "maliciously shoot, stab, cut or wound" her. The fact that appellant came to the arts center in disguise the day before he approached the victim and went to great lengths on the day of the offense to hide his identity by wearing a mask and sunglasses and obscuring the license plate on his car does not exclude the reasonable hypothesis that he intended to commit an assault with the firearm rather than a malicious wounding. Under either scenario it is reasonable to conclude that appellant, a seventy-year-old physician, would wish to hide his identity in order to avoid criminal responsibility for his actions.

Although the firearm appellant possessed contained a full magazine of ammunition, no bullet was in the chamber, and the evidence established appellant could have pulled the trigger repeatedly without causing the firearm to expel a bullet, permitting the inference that he may have acted with the intent merely to scare the victim. Although the evidence also established

that appellant could have chambered and fired a bullet in a matter of seconds, this fact does not exclude the reasonable hypothesis that appellant acted with the intent only to scare the victim.

Further, appellant's statements during the encounter fail to prove beyond a reasonable doubt that he intended to maliciously wound the victim. He said only that he understood she had "made some staff members very unhappy" and that her "management style suck[ed]." He made no direct threats or statements implying a threat, such as that "she would be sorry" or that he would "make her pay" for what she had done.

Finally, appellant's actions in bending the victim's fingers back, scratching her, and stepping on her foot while trying to maintain control of the gun—although they may establish an independent criminal offense—do not establish a specific malicious intent to maim, disfigure, disable or kill coinciding with an ineffectual act done towards the crime's completion.

B.

OVERT ACT

In addition to proving intent, "the Commonwealth must prove beyond a reasonable doubt that [the defendant] committed a direct, but ineffectual, act to accomplish the crime." Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78-79 (2000). "'The question as to what is [an overt] act, is often a difficult one to determine, and no general rule, which can be readily applied as a test to all cases, can be laid down. . . . Each case must, therefore, be determined upon its own facts.'" Jay v. Commonwealth, 275 Va. 510, 525, 659 S.E.2d 311, 320 (2008) (quoting Hicks v. Commonwealth, 86 Va. (11 Hans.) 223, 226, 9 S.E. 1024, 1025 (1889)). "While the overt acts of the accused [need not be] the last proximate acts necessary to the consummation of the crime, they [must be] direct overt acts well calculated to accomplish the result intended." Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946),

quoted with approval in Jay, 275 Va. at 526, 659 S.E.2d at 320. As the Supreme Court recently reiterated in Jay,

> "[T]he act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offence attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offence after the preparations are made."

275 Va. at 526, 659 S.E.2d at 320 (quoting Hicks, 86 Va. (11 Hans.) at 226-27, 9 S.E. at 1025).

Applying these principles in Jay, which involved a conviction for attempted robbery, the Supreme Court held that although the evidence established the defendant's intent to commit robbery, "it did not establish beyond a reasonable doubt the other necessary element of attempted robbery, i.e., a direct overt act that could fairly be characterized as 'well calculated to accomplish the result intended.'" Id. (quoting Granberry, 184 Va. at 678, 36 S.E.2d at 548). Jay involved the efforts of an undercover police officer to purchase marijuana from the defendant. The two met at an agreed-upon location but never consummated the sale because the officer demanded to see the drugs before paying and the defendant refused to show her the drugs unless she got into his car. Id. at 521-22, 659 S.E.2d at 317-18. He asked her repeatedly to get in, but she refused, and her back-up officers intervened before any drug transaction took place. Id. A search of the defendant's car yielded no marijuana, but police recovered a firearm from the defendant's person. Id. at 522, 659 S.E.2d at 318. They also found a second man hiding in the back of the defendant's sport utility vehicle, and beneath him was the loaded magazine for the defendant's weapon. Id.

Although the defendant subsequently admitted to police that he had the intent to rob the undercover officer, he argued the evidence failed to prove he committed an overt act calculated

to accomplish that purpose and, thus, that he was not guilty of attempted robbery. Id. at 523, 525, 659 S.E.2d at 318-19, 320. He reasoned that,

> "[b]ecause the scenario was interrupted, it [was] an unwarranted assumption that he was going to use force [to obtain the undercover officer's money]." As an alternative interpretation of the facts, [the defendant] posit[ed] that it was not untenable that, if [the detective] had given [the defendant] the money, he would have told her that he did not have any marijuana and did not intend to return the money, and would have then directed her to get out of the vehicle without ever using any force or intimidation.

Id. at 525, 659 S.E.2d at 320 (emphasis added). On that basis, argued the defendant, "the evidence thus supported an attempt to obtain money by false pretenses but not robbery." Id.

The Supreme Court agreed, noting that the defendant did not brandish or even mention the firearm in his possession; made no threats in an effort to get the officer to get into his car; neither demanded nor asked for her money; and "took no direct action" to obtain her money. Id. It concluded as follows:

> Without any such evidence, the events leading up to the arrest of [the defendant] were just as consistent with an attempt to obtain money by false pretenses as they were with an attempt to commit robbery. When as here, the facts are "equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused]." Stated differently, the Commonwealth had the burden to prove beyond a reasonable doubt that [the defendant] committed the crime of attempted robbery and it failed to do so. One would have to resort to speculation and conjecture in order to find that [the defendant] was attempting to rob [the undercover officer] as opposed to attempting to obtain money by false pretenses. This, of course, is impermissible. We therefore hold as a matter of law that the evidence in this case was insufficient to prove beyond a reasonable doubt that [the defendant] committed the crime of attempted robbery.

Id. at 526-27, 659 S.E.2d at 320-21 (quoting Burton v. Commonwealth, 108 Va. 892, 899, 62 S.E. 376, 379 (1908)) (citations omitted); see also Hopson v. Commonwealth, 15 Va. App. 749, 752, 427 S.E.2d 221, 223 (1993) (holding the defendant was not guilty of attempted robbery

where the evidence established an intent to rob the store but his actions were "consistent only with scouting the store" and did not constitute a "move toward realizing the ultimate purpose of robbery").

Similarly, here, the evidence is insufficient to establish the overt act necessary to prove an attempted malicious wounding. Here, like in Jay, "the scenario was interrupted" when the victim made contact with appellant by grabbing his hand, and it was "an unwarranted assumption" that he was going to attempt to maliciously wound her with the weapon she felt under his jacket rather than merely to threaten her with words or through a display of the weapon. See Jay, 275 Va. at 525, 659 S.E.2d at 320. Here, like in Jay, "[o]ne would have to resort to speculation and conjecture in order to find that [appellant] was attempting to [maliciously wound his victim] as opposed to attempting [merely to threaten or scare her]. This, of course, is impermissible." Id. at 527, 659 S.E.2d at 321.

## III.

Thus, the circumstances, although suspicious, do not constitute proof of attempted malicious wounding beyond a reasonable doubt because they fail (A) to exclude the reasonable hypotheses that appellant acted with the intent to do no more than scare the victim and (B) to establish an overt act committed toward the consummation of a malicious wounding rather than a lesser crime. For these reasons, we hold the evidence was insufficient to prove attempted malicious wounding, and we reverse and remand for appropriate further proceedings consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.