COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia


GREGORY ANTHONY TAYLOR

MEMORANDUM OPINION* BY
v.        Record No. 1390-16-2            JUDGE MARLA GRAFF DECKER
JANUARY 9, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Donald C. Blessing, Judge

M. Paul Valois (James River Legal Associates, on brief), for
appellant.

J. Christian Obenshain, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Gregory Anthony Taylor appeals his conviction for using a firearm in the commission of

first-degree murder in violation of Code § 18.2-53.1.[1]  On appeal, he argues that the evidence was

insufficient to support his conviction because it failed to prove that a firearm was "used against" the

victim, who died of knife wounds.  We hold that the evidence, viewed under the proper standard,

supports a finding that the appellant used or attempted to use a firearm or displayed one in a

threatening manner while committing or attempting to commit first-degree murder of the victim.

Consequently, we affirm the challenged conviction.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The appellant was also convicted of a second count of using a firearm in the
commission of a felony, capital murder, two counts of first-degree murder, and possession of a
firearm by a convicted felon.  He was sentenced to two terms of life in prison for the murder
convictions, as well as three years for the use-of-a-firearm conviction and two years for the
felon-in-possession conviction.  These convictions and sentences are not before the Court in this
appeal.

# I. BACKGROUND[2]

At the appellant's trial for capital murder, two counts of first-degree murder, and related firearm offenses, the evidence proved that on November 23, 2014, the appellant killed Kenneth Beasley and Radford Ranson in the basement of Ranson's home. Beasley had both a gunshot wound and numerous stab wounds, either of which would have been fatal. Beasley's autopsy revealed that the bullet entered his back and appeared to have been fired from a distance.[3] Ranson sustained several knife wounds, including multiple defensive wounds. He was killed by a knife wound that severed an artery in his arm. On the basement floor near Ranson's body, law enforcement found two knives and a .357 magnum revolver, all of which were "covered in blood."[4] The revolver had been fired twice. An officer also found a .38 caliber bullet near the basement stairs that appeared to have ricocheted off the wall. The .38 caliber bullet was "consistent with what would be fired from [the .357] revolver." Ballistics testing indicated that although the bullet recovered from the basement and "test fires taken from the submitted revolver . . . exhibit[ed] the same general rifling characteristics," microscopic examination was "inconclusive" regarding whether the .38 caliber bullet was fired from the revolver. Fragments of a bullet that had passed through the basement ceiling were also recovered. Laboratory analysis identified blood on the gun's cylinder that fit Ranson's DNA profile and blood on its

---

[2] When the sufficiency of the evidence is challenged on appeal, the Court views the evidence and all reasonable inferences flowing from it in the light most favorable to the Commonwealth, the party who prevailed in the trial court. Rowland v. Commonwealth, 281 Va. 396, 399, 707 S.E.2d 331, 333 (2011).

[3] The bullet entered Beasley's left lower back and exited the right side of his abdomen. "No bullet or bullet fragments were left inside the body."

[4] The crimes were investigated by the Buckingham County Sheriff's Department with the assistance of the Virginia Department of State Police.

barrel that fit the profiles of both Ranson and Beasley. No blood from the appellant was identified in either location.

Law enforcement officers arrived at the scene in response to a 911 call made at 4:38 a.m. by a person who identified himself as Beasley. The caller reported that he had been shot and said his attacker had fled. Shortly after arriving, the officers encountered the appellant outside the house. He was "literally covered from head to toe in blood[,] . . . like he was painted in [it]," but his only notable injury was a wound on the back of his hand. He told one of the sheriff's deputies that "he didn't need to be looked at" but "the fuckers inside [the house] needed an ambulance." The appellant claimed that the two victims tried to force him to make methamphetamine and then attempted to kill him. He said that they put a gun in his mouth and he feared for his life. He admitted to gaining control of the gun and firing two shots, claiming that he did so as one of the men came toward him. He explained that after he fired the weapon at the approaching man the first time, the man grabbed his stomach and "came at him again." The appellant said that, in response, he "fired a second time." He suggested that "he had to kill . . . them because it was either them or him." While still at the scene, the appellant also told officers on multiple occasions that he had "killed those two motherfuckers." Additionally, he repeated that the victims, who were larger than him, "thought they were Superman" but he was "their kryptonite."

About two weeks later, the appellant told a sheriff's department investigator that immediately before he killed the two men, Beasley threatened to kill him and he saw Ranson reach for a gun. The appellant claimed that he grabbed the gun before Ranson could do so, closed his eyes, and "just shot" as Beasley came toward him. He said that Beasley "wrestled the gun from" his grasp and that he then drew his knife and began stabbing Beasley. He claimed

that Beasley then wrestled the knife away from him and cut him with it. The appellant admitted that it was not true that the victims had put a gun in his mouth.

Additional evidence included text messages sent by the appellant and Beasley in the hours immediately preceding the murders. Two messages were sent in rapid succession from the appellant's phone shortly before 3:00 a.m. The first said, "I g0t [sic] jumped in i dont w [sic]." The second one said, "They fucked me up bad." A message sent from Beasley's phone at 4:17 a.m. said, "I'm over here at [Ranson's], done beat the shit out of this fuck that disrespected [Ranson]."

At the close of the Commonwealth's evidence, the appellant moved to strike the charge of using a firearm in the commission of a felony against Ranson because no evidence indicated that Ranson was shot. The prosecutor responded that after the appellant had shot Beasley, Beasley and Ranson were "trying to get the gun before" the appellant could "do[] more harm with that second bullet." He also pointed out that after they managed to take the gun away from the appellant, the appellant used his knives to stab the two men. The Commonwealth argued as a result that the appellant "display[ed]" the firearm against Ranson. The trial court denied the motion.

The appellant testified in his own behalf, stating that he suggested making methamphetamine to impress the two men but then changed his mind. He said that Beasley hit him and then told Ranson to "get the gun" so that they could "kill [him]." The appellant further claimed that he saw Ranson look at a gun lying nearby and he was able to grab the gun before Ranson did so. According to the appellant, he then closed his eyes and fired only one shot, intending to hit Beasley, who he said was coming toward him. Almost simultaneously, Ranson grabbed him from behind and choked him. The appellant suggested that he then somehow lost the gun, so he used one of two knives belonging to him to fight the men off and escape. He said

- 4 -

that he was "happy to be alive after what they tried to do to [him]." He admitted, however, that he bragged to law enforcement about fighting the men off, that he had not seen either of the men with a knife, and that they never put the gun in his mouth as he had previously reported.

The trial court convicted the appellant of capital murder, two counts of first-degree murder, two counts of use of a firearm in the commission of a felony, and one count of possession of a firearm by a convicted felon, in violation of Code §§ 18.2-31, -32, -53.1, and -308.2. The court stated generally that it did not "think . . . the defense" theory of the case was "credible." More specifically, the court accepted the appellant's account that he "got ahold of that gun and he had it pointed." However, it rejected the appellant's claim that he then "closed his eyes," saying, "I don't think that's credible. I don't think that is consistent with what you'd do if you have been the subject of an attack in this instance." The court also held, despite the appellant's claims to the contrary, that he had "ample opportunities to leave" or avoid the confrontation with the victims. Additionally, the court noted that DNA evidence from both victims was found on the barrel of the gun, that Beasley was shot in the back from a distance, and that both victims sustained defensive wounds from the appellant's attack of them with his knives. Further, it pointed to the degree of force employed in committing the killings. Finally, the court held that the evidence supported a finding that the appellant intended to kill Ranson or, even if he did not "specifically intend" to kill Ranson, that he acted with an intent to kill Beasley that was transferred to Ranson.

The court sentenced the appellant to two terms of life in prison for the murder convictions.[5] The appellant also received a sentence of three years for each of the use-of-a-firearm convictions and two years for the felon-in-possession conviction.

---

[5] The court imposed no punishment for the appellant's first-degree murder of Ranson.

## II. ANALYSIS

The appellant argues that the evidence was insufficient to support his conviction for using a firearm in the first-degree murder of Ranson. In support of the argument, he points out that Ranson "died of knife wounds." He suggests that the "record is devoid of evidence" that the appellant used, attempted to use or displayed any actual or simulated firearm against Ranson "at any time," including during the time when he murdered Ranson with a knife. The Commonwealth responds that the evidence, viewed under the proper standard, was sufficient to prove all elements of the offense.[6]

When the sufficiency of the evidence is challenged on appeal, the Court reviews the evidence and all reasonable inferences flowing from it in the light most favorable to the Commonwealth as the prevailing party at trial. E.g., Towler v. Commonwealth, 59 Va. App. 284, 290, 718 S.E.2d 463, 466 (2011). On appellate review, the Court asks only if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The appellant was tried by the circuit court, sitting without a jury. Consequently, that court was the fact finder, and its judgment is afforded the same weight as a jury verdict. Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011). Additionally, "[i]n a bench trial, a judge's 'major role is the determination of fact, and with experience in fulfilling that role comes expertise.'" Burton v. Commonwealth, 58 Va. App. 274,

---

[6] The Commonwealth argues that the appellant waived this assignment of error by failing to cite adequate legal authority to support the challenge as required by Rule 5A:20(e). We assume without deciding that the appellant's citation to the statute and case law setting out the standard of review for sufficiency-of-the-evidence claims, coupled with brief argument regarding how he alleges the evidence fails to prove the elements of the offense, is sufficient to satisfy the requirements of Rule 5A:20(e).

282, 708 S.E.2d 444, 448 (2011) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004)).  Accordingly, the appellate court will not set aside the trial court's judgment unless it is "plainly wrong or without evidence to support it."  Towler, 59 Va. App. at 290, 718 S.E.2d at 466 (quoting Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005)).

For purposes of the sufficiency analysis, we are guided by other well-established legal principles.  The trier of fact is entitled to reject an appellant's claims of innocence and his self-serving statements to law enforcement.  See, e.g., Rawls v. Commonwealth, 272 Va. 334, 350, 634 S.E.2d 697, 705 (2006) (rejecting the defendant's statement to police).  Additionally, determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to see and hear them as they testify.  See Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015).  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused . . . ."  Marable v. Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998).  Further, the fact finder may "accept the parts of a witness' testimony it finds believable and reject other parts as implausible."  Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (*en banc*).  Finally, where the trier of fact rejects the testimony of the accused, it may treat his "prevarications as 'affirmative evidence of guilt.'"  Sierra v. Commonwealth, 59 Va. App. 770, 784, 722 S.E.2d 656, 663 (2012) (quoting Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010)).

Code § 18.2-53.1 provides that "[i]t shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit" any of several enumerated crimes, including

murder.[7] The recognized purpose of the statute is "to deter violent criminal conduct" by "'preventing actual physical injury or death'" as well as "'discourag[ing] criminal conduct that produces fear of physical harm.'" Rose v. Commonwealth, 53 Va. App. 505, 513, 673 S.E.2d 489, 493 (2009) (quoting Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980)).

The statute as applicable here permits conviction under either of two theories. See Du v. Commonwealth, 292 Va. 555, 566, 790 S.E.2d 493, 500 (2016) (noting that where the trial court does not articulate the "specific reason" for its ruling, the appellate court need not determine that reason and "may rely upon any reasonable basis in the record that supports the trial court's decision"). The first involves "us[ing] or attempt[ing] to use" the firearm. Code § 18.2-53.1. Controlling case law interpreting the statute provides that a "person 'uses' [or attempts to use] a firearm" within the meaning of Code § 18.2-53.1 "if he or she employs [or attempts to employ] it." See Rowland v. Commonwealth, 281 Va. 396, 401, 707 S.E.2d 331, 334 (2011). The second theory involves "display[ing]" the firearm "in a threatening manner." Code § 18.2-53.1. "A person 'displays' a firearm if he or she manifests it 'to any of a victim's senses.'" Rowland, 281 Va. at 401-02, 707 S.E.2d at 334 (quoting Cromite v. Commonwealth, 3 Va. App. 64, 66, 348 S.E.2d 38, 39 (1986)). Further, with regard to either theory, the use, attempted use, or threatening display must occur "during" the commission or attempted commission of the enumerated felony. Id. at 400-01, 707 S.E.2d at 333 (equating the statute's use of "while" with "during"). Manifestly, the requirement of use or display "'during'" the underlying felony "does

_____

[7] The relevant indictment tracks this language, charging the appellant with "us[ing], attempt[ing] to use, or display[ing] in a threatening manner, a firearm, while committing or attempting to commit" first-degree murder. The appellant's conviction for the first-degree murder of Ranson is not at issue in this appeal, and it is therefore undisputed for purposes of our analysis that the appellant committed the elements of that offense.

not encompass [the period] 'before' [or] 'after' [it]." Id. at 401, 707 S.E.2d at 334 (quoting Harward v. Commonwealth, 229 Va. 363, 366, 330 S.E.2d 89, 91 (1985)).

Contrary to the appellant's contention, none of the methods of proof requires evidence that the victim was in fact killed with a firearm. Instead, the statute requires only that the defendant used, attempted to use, or displayed a firearm in a threatening manner during the commission or attempted commission of the relevant enumerated felony. See Code § 18.2-53.1. Consequently, the fact that Ranson was not shot and instead died from a knife wound is not dispositive of the appellant's guilt for this offense.

An attempt requires proof of the requisite intent and a direct or overt act in furtherance of the commission of the underlying offense. E.g., Tharrington v. Commonwealth, 2 Va. App. 491, 493-94, 346 S.E.2d 337, 339 (1986). Intent is a question of fact that may and often must be proved through circumstantial evidence such as a defendant's conduct and statements. See Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "[L]ike any element of a crime, [it] may be proved by [direct or] circumstantial evidence as long as th[e] evidence [as a whole] excludes all reasonable hypotheses of innocence flowing from it." Creamer v. Commonwealth, 64 Va. App. 185, 205, 767 S.E.2d 226, 235 (2015).

Regarding the direct or overt act requirement, case law makes clear that "mere preparation" is insufficient. Tharrington, 2 Va. App. at 494, 346 S.E.2d at 339. Generally, "preparation consists [of] . . . arranging the means or measures necessary for the commission of the offense," and "the attempt is the direct movement toward the commission after the preparations are made." Siquina v. Commonwealth, 28 Va. App. 694, 701, 508 S.E.2d 350, 354 (1998) (alterations in original) (quoting Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946)). To establish the requisite direct act, however, the act proved "need not be the last proximate act to the consummation of the crime in contemplation." Wilson v.

Commonwealth, 249 Va. 95, 101-02, 452 S.E.2d 669, 674 (1995) (quoting Granberry, 184 Va. at 678, 36 S.E.2d at 548).

The rationale for requiring proof of an overt act is that, without such proof, "too much uncertainty [may exist] as to the accused's actual intent. However, if 'the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt.'" Tharrington, 2 Va. App. at 494, 346 S.E.2d at 339 (citation omitted) (quoting State v. Bell, 316 S.E.2d 611, 616 (N.C. 1984)). Thus, if the defendant's intent is clear, the overt act used to prove an attempt need not be a significant one. See id.

In the appellant's case, the evidence, viewed in the light most favorable to the Commonwealth, supports the appellant's conviction because it proves that he attempted to "use" a firearm "during" an attempt to kill Ranson. See Rowland, 281 Va. at 400-01, 707 S.E.2d at 333. The evidence also proves that he "display[ed]" the firearm "in a threatening manner" during the attempt. See Code § 18.2-53.1.

The appellant texted someone to indicate that during the hours immediately prior to the murders, he "g0t [sic] jumped in" and "[t]hey fucked [him] up bad." Beasley, too, texted someone while at Ranson's home with the message "done beat the shit out of this [person] that disrespected [Ranson]." In addition to the substantive information conveyed in the texts, they indicate that the violence ceased long enough for the appellant and Beasley to communicate with others about it, which they did by texting others between about 3:00 a.m. and 4:15 a.m. Despite this fact, no evidence indicates that the appellant attempted to obtain help via text or to leave Ranson's home before the events that led Beasley to call 911 at 4:38 a.m. The trial court expressly rejected portions of the appellant's testimony and found that he had ample opportunity to leave the home in order to avoid the confrontation that ended in the murders.

Additionally, the appellant made statements indicating that he "had to kill" the victims and that they "thought they were Superman" but he was "their kryptonite." From these statements and other evidence, the trial court found that the appellant acted with an intent to kill both men and did so with premeditation. See generally Rhodes v. Commonwealth, 238 Va. 480, 485, 384 S.E.2d 95, 98 (1989) (noting that first-degree murder as proscribed by Code § 18.2-32 requires proof of premeditation).

Finally, the evidence showed that the appellant shot Beasley in the back, from a distance, and fired a second shot that lodged in the basement ceiling. The appellant admitted that Ranson was nearby when he fired. The appellant also admitted that he immediately became embroiled in a physical fight with one of the men and that he relinquished control over the firearm only because one of the men succeeded in wresting it away from him. Further, he said that he pulled his knives and continued to struggle with both men. When law enforcement arrived, the appellant was "literally covered from head to toe" in blood, "like he was painted in" it, although he appeared to have only a single knife wound. Also, the gun and the two knives were covered in blood. Although the appellant claimed that he was defending himself when he attacked the victims with his knives, the trial court found the evidence proved that the knife wounds the victims sustained were defensive wounds. Additionally, it noted that DNA evidence showed that Ranson's blood was on both the cylinder and barrel of the gun.

This evidence supports the conclusion that the appellant violated Code § 18.2-53.1 in multiple ways. First, the appellant "display[ed]" the firearm "in a threatening manner" toward Ranson when he grabbed the firearm as Ranson looked on, shot Beasley in the back from an apparent distance, fired a second bullet while Ranson was also present in the room, and then became embroiled in a physical struggle for the gun in which the appellant ultimately employed two knives. See Code § 18.2-53.1. He did so in a way that placed *Ranson* in fear of physical

harm by "manifest[ing]" the firearm not only to Ranson's sense of sight but also to his hearing, based on the sound of the two gunshots.  See Rowland, 281 Va. at 401-02, 707 S.E.2d at 334 (reasoning that a person "'displays' a firearm if he or she manifests it 'to any of a victim's senses'" (quoting Cromite, 3 Va. App. at 66, 348 S.E.2d at 39)).  Further, the appellant did so during a course of criminal conduct constituting at least the *attempted* commission of the murder of Ranson.  In light of the trial court's rejection of the appellant's claim of self-defense, his statement that he "had to kill" the victims "because it was either them or him" proved that he formed the intent to murder the men.  Cf. Sizemore v. Commonwealth, 218 Va. 980, 983, 986, 243 S.E.2d 212, 214-16 (1978) (holding that the evidence established that the defendant committed a sufficiently direct act with the requisite intent to prove attempted murder where he obtained a loaded gun, aimed it, made repeated threats to kill the victim, and "advanced" on him before relinquishing the weapon without firing it).  Moreover, the appellant's ongoing struggle against Beasley and Ranson for the gun, coupled with his decision to pull two different knives on the men during the melee when he lost control of the gun, provided not only additional evidence of his ongoing intent but also evidence of the necessary direct act.  Cf. id.

Second, this same evidence supports a finding that during an obvious fray, when the appellant first fired the revolver and hit Beasley in the back from a distance, he intended to "use" the firearm to kill both men.  See Code § 18.2-53.1.  It also supports a finding that he engaged in an overt act toward the commission of the offense by firing the second bullet while Ranson was nearby and then using the two knives against Beasley and Ranson when the struggle for the gun ensued.  Thus, the evidence proves at least an "attempt[ed] . . . use" of the firearm against Ranson while attempting to kill him.  See id.  The presence of Ranson's blood on the gun's cylinder and barrel supports a finding that the gun was still part of the altercation when the appellant attacked Ranson with the knives.  This same evidence supports a finding that this was

an unbroken series of events motivated by the single intent to kill both men.  Compare Rowland, 281 Va. at 402, 707 S.E.2d at 334 (reversing the defendant's conviction for using a firearm in the commission of statutory burglary where no one saw the defendant enter the restaurant and the elements of burglary were complete before he "used or displayed a firearm" toward the restaurant's occupants), with Smith v. Commonwealth, 61 Va. App. 690, 694, 739 S.E.2d 280, 282 (2013) (distinguishing Rowland where the victim heard knocking at her door, watched as the defendant entered without an invitation, and began screaming when she "immediately" noticed a firearm at the defendant's side, which he put to her head to silence her).  While the gun was not the sole means by which the appellant perpetrated the murder of Ranson, Virginia case law contains no such requirement, and the record supports the trial court's finding that the firearm was part of the ongoing course of conduct through which Ranson's murder was ultimately committed.

## III.  CONCLUSION

The evidence proves that the appellant "display[ed]" a firearm in a threatening manner "while committing or attempting to commit" the murder of Ranson as required by Code § 18.2-53.1.  It also proves that the appellant violated the statute by "us[ing] or attempt[ing] to use" the firearm "while committing or attempting to commit" that offense.  Consequently, we affirm the challenged conviction.

Affirmed.

- 13 -